# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LYNN SCOTT, LLC; THE FARMER'S WIFE, LLC, on behalf of themselves and all others similarly situated, | Case No. |
| Plaintiffs, | |
| v. | |
| GRUBHUB INC. | |
| Defendant. | |

## CLASS ACTION COMPLAINT

## TABLE OF CONTENTS

Introduction ........................................................................................................................1

Jurisdiction and Venue ......................................................................................................2

Parties .................................................................................................................................3

Factual Allegations ............................................................................................................3

    A.   Grubhub's food ordering website and mobile apps ..........................................3

    B.   Gruhub tells consumers it's working cooperatively with restaurants ...............4

    C.   Grubhub decides to add unaffiliated restaurants to its website and mobile apps without the restaurants' permission ...................................................6

    D.   Grubhub's unauthorized use of restaurants' names and logos misleads consumers and harms restaurants ...........................................................8

        1.   Restaurants have good reasons for choosing not to work with Grubhub ..............................................................................8

        2.   Grubhub knows restaurants don't want its business and tells drivers to disguise their affiliation with Grubhub .......................................11

        3.   Consumers continue to believe restaurants on Grubhub are working cooperatively with Grubhub ................................................13

        4.   Customer confusion leads to poor experiences that hurt restaurants' hard-earned reputations .......................................14

        5.   Grubhub diverts and impairs demand for local restaurants ...................17

    E.   Grubhub knows it is harming restaurants and uses that harm to force restaurants into unwanted partnerships ..............................................19

Plaintiffs' Experience .......................................................................................................20

    A.   Lynn Scott, LLC ..........................................................................................20

    B.   The Farmer's Wife, LLC ..............................................................................23

Class Allegations .............................................................................................................26

First Cause Of Action .....................................................................................................29

    Violation Of Lanham Act – Section 43(A) ..................................................29

Prayer For Relief .............................................................................................................30

Demand For Jury Trial ....................................................................................................31

## INTRODUCTION

1.      For fifteen years, Grubhub told consumers it had partnered with local restaurants to offer coordinated takeout or delivery services. By ordering through Grubhub, consumers were promised "a direct line into the kitchen, avoiding the inefficiencies, inaccuracies and frustrations associated with paper menus and phone orders."

2.      But last year, Grubhub saw it was losing market share to competitors like DoorDash and Uber Eats, and decided it needed to act fast to attract new users and retain its existing customer base. So Grubhub began researching which restaurants were most popular with consumers—and then added those restaurants to its platform without permission.

3.      Grubhub's unauthorized use of popular restaurants' names and logos had the desired effect. Soon Grubhub was reporting revenues that exceeded its expectations and telling shareholders they could expect to see continued growth as a result of its new strategy. In June, Grubhub announced that it was selling its thriving business for $7.3 billion.

4.      Grubhub's financial success has come at restaurants' expense. Consumers still think they're getting a "direct line into the kitchen," but when they order from a restaurant that has been included on Grubhub without the restaurant's permission, the result is a "suboptimal diner experience rife with operational challenges"—or as Grubhub's CEO succinctly put it, "the diner experience sucks."

5.    Consumers understandably blame the restaurants, who they think have partnered with Grubhub to provide them with accurate, reliable, and timely service. The end result for restaurants is significant damage to their hard-earned reputations, loss of control over their customers' dining experiences, loss of control over their online presence, and reduced consumer demand for their services.

6.    Plaintiffs owns two of the restaurants Grubhub added to its online platform without permission, and bring this proposed class action on behalf of more than 150,000 restaurants whose names and logos were likewise used without permission.

7.    Plaintiffs seek a judgment (a) finding that Grubhub has violated the Lanham Act by using restaurant names and logos without authorization and in a manner likely to confuse consumers; and (b) ordering that Grubhub cease its unlawful conduct, turn over its ill-gotten gains, and pay damages to the restaurants it has harmed.

## JURISDICTION AND VENUE

8.    The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. Plaintiffs' claims are based on violations of the Lanham Act, 15 U.S.C. §§ 1051, *et seq*.

9.    The Court also has subject matter jurisdiction pursuant to  28 U.S.C. § 1332(d)(2) because this is a class action in which the amount in controversy exceeds $5,000,000, exclusive of interest and costs; in the aggregate, there are more than 100

members in the proposed class; and at least one class member is a citizen of a state different from Defendant.

10.     Venue is proper under 28 U.S.C. § 1391(b)(1) because Defendant Grubhub resides in this district.

## PARTIES

11.     Plaintiff Lynn Scott, LLC, is a North Carolina limited liability company with its principal office in Durham, North Carolina, and the owner of the restaurant Antonia's in Hillsborough, North Carolina.

12.     Plaintiff The Farmer's Wife, LLC, is a California limited liability company with its principal place of busines in Sebastopol, California, and the owner of the restaurant The Farmer's Wife in Sebastopol, California.

13.     Defendant Grubhub Inc. is a Delaware corporation with a principal place of business in Chicago, Illinois.

## FACTUAL ALLEGATIONS

### A.     Grubhub's Food Ordering Website and Mobile Apps

14.     Defendant Grubhub operates a highly successful online platform that connects users with local restaurants for takeout or delivery. Consumers can access the Grubhub platform through a number of branded websites and mobile apps, including Grubhub, Seamless, LevelUp, AllMenus, and MenuPages.

15.     By acting as an intermediary between consumers looking to order food and restaurants looking for additional customers, Grubhub can offer a number of potential benefits to consumers, restaurants, and to Grubhub itself.

16.     For consumers, Grubhub boasts that it offers "a 'direct line' into the kitchen, avoiding the inefficiencies, inaccuracies and frustrations associated with paper menus and phone orders." Grubhub coordinates with its restaurant partners to ensure consumers receive accurate information and a positive consumer experience. Consumers get ready access to accurate and up-to-date menus listing food restaurants are willing and able to prepare for takeout or delivery, accurate and up-to-date pricing for each menu item, and accurate estimates of the time it will take for the food to be prepared and delivered.

17.     For restaurants, Grubhub offers those with excess capacity an additional way of generating takeout and delivery orders. Grubhub can also generate internet advertising for restaurants who lack an online presence and want one through Grubhub. And for restaurants who do not offer delivery but want to, Grubhub can offer a ready-made delivery infrastructure.

18.     For Grubhub, its partnerships with restaurants allow the company to use those restaurants' names, logos, and strong local reputations to attract users to its platform. Grubhub then charges restaurants a percentage of the takeout and delivery orders it generates through its platform and associated internet advertising.

**B.      Grubhub Tells Consumers It's Working Cooperatively with Restaurants**

19.     Since its founding in 2004, Grubhub had only included restaurants on its platform who had agreed to appear and explicitly given Grubhub permission to use their names and logos.

20.     As Grubhub put it, "From the very beginning, our business has been connecting restaurants with diners to help our restaurant partners grow their profits. This has not changed."

21.     Grubhub's partnership with local restaurants is a central feature of the Grubhub platform and one that consumers have come to expect. The efficiencies and "direct line into the kitchen" that Grubhub promises consumers depend on those partnerships. Without restaurants' permission and cooperation, consumers cannot be assured that they are receiving accurate, up-to-date information about the food local restaurants are able and willing to prepare for takeout or delivery.

22.     Grubhub has repeatedly emphasized its partnerships with restaurants in its marketing to consumers. For example, in a press release announcing that Grubhub had reached a nationwide partnership agreement with Shake Shack, Grubhub touted itself as the food-ordering platform with "the largest and most comprehensive network of restaurant partners" and stressed that it was "proud to work with more than 140,000 restaurant partners in over 2,700 U.S. cities and London." Grubhub used similar language in numerous other press releases and consumer marketing.

23.     In describing Grubhub's appeal for consumers, Grubhub's former Chief Operating Officer likewise stressed the importance of partnerships with local restaurants: "Diner downloads our app, or goes to the site at grubhub.com, and from there they're able to look at a plethora of restaurants that we have formed partnerships with where we're able to list their content on our website. Diners are then really able to

go in and see what are the restaurants that deliver to me, what are the restaurants I can pick up from."

24. Grubhub's statement that partnerships enable it to list local restaurants' content on its website reflects both the law and consumers' understanding: if a restaurant is listed on Grubhub's platform, the restaurant has given Grubhub permission to use its name and logos, and is working cooperatively with Grubhub to provide takeout and food delivery services.

**C.    Grubhub Decides to Add Unaffiliated Restaurants to Its Website and Mobile Apps Without the Restaurants' Permission**

25. Grubhub's business model proved a tremendous success with consumers. By 2018, the company had over 15 million active users and was continued to project rapid growth—leading to a market capitalization in the billions.

26. In October 2019, however, Grubhub was forced to slash its projections, as competing services like DoorDash and Uber Eats were gaining in popularity and cutting into Grubhub's market share and expected revenue.

27. As soon as Grubhub announced its revised earnings projections, its stock cratered—losing more than 40% of its value in a single day—and Grubhub received downgrades from several market analysts, including double downgrades from Bank of America Merrill Lynch and Oppenheimer.

28. In response, Grubhub told stockholders it intended to aggressively increase the number of restaurants available to users through the Grubhub platform. The company's research indicated that "the number one thing that matters to

consumers is restaurants," and so by adding more restaurants to its platform, Grubhub expected both that it could "capture new diners that we otherwise might not have captured" and that those diners would be "willing to pay more" for hard-to-find restaurants.

29.     The problem was that attracting new restaurant partners, and negotiating agreements under which Grubhub could use those restaurants' names and logos to attract customers, would take time. And Grubhub didn't want to wait. The company was looking for a quick return to the rapid growth and astronomical market valuations it had previously enjoyed.

30.     So Grubhub decided it would simply include restaurants on its platform without their permission. Forming new partnerships would have been difficult, time-consuming, and expensive. But as Grubhub told shareholders, "it is extremely efficient and cheap to add non-partnered inventory to our platform."  Within three months, Grubhub had added more than 150,000 restaurants to its web site and mobile apps without first obtaining those restaurants' permission.

31.     Grubhub's decision has proven highly lucrative for the company. Its stock quickly recovered as, only one quarter after badly missing its performance targets, Grubhub was able to report metrics "at the very high end of our expectations."

32.     Grubhub attributed its increased growth and revenue figures to its new strategy of listing unaffiliated restaurants on its platform and told shareholders it expected the strategy to continue spurring increased growth throughout 2020.

33.     In June 2020, Grubhub announced it had reached an agreement to sell its business for $7.3 billion.

**D.      Grubhub's Unauthorized Use of Restaurants' Names and Logos Misleads Consumers and Harms Restaurants**

34.     Grubhub's decision to add unaffiliated restaurants to its platform may have reaped immediate dividends for Grubhub, but those gains came at the expense of restaurants—who had good reasons for choosing not to partner with Grubhub.

35.     By including those restaurants on its platform anyway, Grubhub is misleading consumers, who reasonably believe the restaurants have partnered with Grubhub and will be working cooperatively with Grubhub to provide them with accurate, reliable, and timely service.

36.     When Grubhub instead provides what it admits is a "suboptimal diner experience rife with operational challenges," consumers understandably blame the restaurants—who they assume are working with Grubhub and who they now associate with a bad dining experience.

**1.      Restaurants Have Good Reasons for Choosing Not To Work With Grubhub**

37.     While there are good reasons a restaurant might choose to partner with Grubhub, there are also plenty of reasons that restaurants choose not to.

a.     *Don't need or want additional orders*: Grubhub works best for restaurants who need its advertising power to generate consumer demand. Popular local restaurants that already attract lots of customers often don't need or want additional orders. They might not have the capacity to fill more orders without disrupting normal

operations, overburdening staff, or sacrificing the quality that made them popular in the first place.

b.   *Don't want to lose control over customer service*: When a restaurant agrees to let Grubhub take over the ordering and food delivery process, they also lose a substantial degree of control over the customer's experience. For restaurants that built their business on a sterling reputation for customer satisfaction, that's not a compromise they are willing to make.

c.   *Grubhub drivers are sometimes late or unprofessional*: Some restaurants have complained that Grubhub employees hurt their reputation by delivering customers' food late and cold. Grubhub may not ensure that its drivers pick up food as soon as it is ready and Grubhub drivers often "stack" orders, meaning they wait for subsequent orders to be ready rather than delivering each customer's food immediately after picking it up. Restaurants also report receiving customer complaints due to a variety of unprofessional behavior by certain Grubhub drivers, including stealing food.

d.   *Too many cancelled orders or customer refunds*:  Grubhub makes it easy for consumers to order food, but that effortlessness can lead to a lot of cancelled orders that cause restaurants to waste food and lose money. Grubhub also has drawn criticism for issuing refunds without first contacting the restaurant to verify that refund is warranted, which also costs the restaurant money.

e.   *Don't want to provide takeout or delivery*: While takeout and delivery are appropriate for some types of food, many restaurants want to ensure that their food is

enjoyed promptly after preparation. They may therefore choose not to offer takeout or delivery.

f.   *Want tips to go to their employees*: When a customer orders through Grubhub, the restaurants' employees don't receive any tips, which instead go to Grubhub and its drivers.

g.   *Restaurants have their own delivery services*: Many restaurants have their own delivery services, through which they can assure good customer service and timely deliveries. Grubhub's delivery infrastructure is therefore not needed or wanted, as it would compete with the restaurant's own service, in which the restaurant has already invested resources.

h.   *Restaurants have partnerships with another provider*: Restaurants who do want to pay a third-party to provide delivery services will often shop around and choose a provider who offers the best deal to the restaurant, provides the best customer service, is most widely used by local consumers, or has the best history of supporting its restaurant partners. Restaurants who have partnerships with other providers often don't need or want Grubhub to provide competing delivery services.

i.   *Grubhub takes too much of the restaurants' profit*: Grubhub takes a large percentage of each order from restaurants. The various commissions and fees charged by Grubhub often exceeds 30% of the total order amount, which can leave the restaurant with few if any profits. For example, one restaurant owner recently posted a statement from Grubhub showing that out of $1,042.63 in 46 pre-paid owners, he received only $376.54 from Grubhub.

j.   *Grubhub has a poor reputation*: Grubhub has a history of engaging in sharp business practices and treating its restaurant partners poorly. Grubhub has been accused of charging its restaurant partners for phone calls that don't result in orders, confirming orders without the restaurants' approval, and creating websites that use restaurants' names and logos without their approval. Restaurants who research Grubhub will often refuse partnership overtures as a result of that poor reputation.

38.   Grubhub knew many popular local restaurants did not want to partner. It had tried and failed to convince many of them to offer food services through Grubhub's platform and knew that restaurants were increasingly aware of the many negatives that a partnership with Grubhub could bring.

39.   The difficulty Grubhub was encountering attracting additional restaurants to its platform was a major reason Grubhub decided to start adding restaurants to its website and mobile apps without first obtaining the restaurants' consent or agreement.

### 2.   Grubhub Knows Restaurants Don't Want Its Business and Tells Drivers to Disguise Their Affiliation with Grubhub

40.   After Grubhub began including restaurants on its platform without their consent, consumers began ordering food from the newly added restaurants through Grubhub's website or mobile apps.

41.   Grubhub needed a way to fill those orders, but it knew that the restaurants hadn't given Grubhub permission to solicit customers on its behalf, didn't want to partner with Grubhub, and likely would not accept orders they knew came from Grubhub.

42.     Grubhub decided that rather than interacting with the restaurant directly, as it did with its restaurant partners, it would disguise the orders and make them appear as if they came directly from consumers.

43.     Grubhub told its drivers to act as if they were a diner rather than from Grubhub: they should place the order themselves using the diner's name, they should pick up food from the general consumer pickup area and not look for a Grubhub pickup spot, and they should tell the restaurant they were "picking up an order for [diner's name]," rather than picking up a Grubhub order. Drivers are also specifically told not to leave a tip.

44.     So drivers would know when to act like a Grubhub driver and when to disguise their affiliation, Grubhub made the difference between partnered restaurants and unaffiliated restaurants obvious on the drivers' mobile apps. Orders placed with unaffiliated restaurants appeared in purple and were clearly labeled by the company as "Place & Pay Orders," meaning that the driver would need to place and pay for the order using the customer's name.

45.     Drivers dislike the purple, "Place & Pay Orders," which Grubhub has acknowledged are "a bad experience for drivers." As one driver wrote on an online forum for Grubhub drivers, "The entire process is sketchy, I feel dirty every time I do it. I don't like it at all but on a slow day I don't really have a whole lot of options available to me so I just suck it up." Other drivers have said online that they've started refusing to fulfill these orders altogether.

### 3. Consumers Continue to Believe Restaurants on Grubhub are Working Cooperatively with Grubhub

46. While Grubhub makes it very clear to its drivers which restaurants have been listed without their consent—meaning that order fulfillment will require more time and effort, as well as a little luck—Grubhub does not do the same for consumers.

47. For 15 years, the restaurants that appeared on Grubhub's platform were willing partners and were working cooperatively with Grubhub. That is no longer the case, but Grubhub does not draw consumers' attention to the fact.

48. Restaurants listed without their consent are not highlighted in purple as they are on Grubhub drivers' apps. Nor is there any other prominent disclosure to consumers that a particular restaurant's name or logo is used without permission; that the restaurant will not be working cooperatively with Grubhub to provide accurate, reliable, and timely service; or that because Grubhub is offering food services from the restaurant without consent, there is a much greater likelihood that the order will take longer to fill, will be filled incorrectly, will be delivered cold, or will eventually be cancelled altogether.

49. Because Grubhub does not tell consumers any of this, they continue to believe Grubhub is working cooperatively with the restaurants on its platform to provide accurate, reliable, and timely service. This has led to a great deal of confusion and frustration for consumers who think they are getting a "direct line to the kitchen."

50. Consumers frequently call restaurants who are unaffiliated with Grubhub to ask about orders they placed on Grubhub—orders the restaurants know nothing

about. One restaurant chef and owner told *Wired*, for example, that he had received mysterious calls about delivery for weeks, asking for things like an extra gallon of iced tea with an order. He eventually figured out the source of the confusion: Grubhub had created a webpage for his restaurant without his consent.

51.     Many other restaurant owners have conveyed similar stories, as have consumers, including on online forums that Grubhub monitors and that are designated for discussions about Grubhub.

52.     Grubhub drivers have similarly reported that consumers don't realize that some restaurants with Grubhub pages are not actually affiliated with Grubhub. For example, after one driver explained to a customer why she had difficulty getting her order filled: "She had been so happy to see this restaurant finally delivered and I could see her heart kind of broke a bit when I told her how shady [Grubhub] had been."

### 4.     Customer Confusion Leads to Poor Experiences that Hurt Restaurants' Hard-Earned Reputations

53.     Grubhub knows that including restaurants on its website and mobile apps without permission leads to "a bad experience for diners," but continues to do so anyway.

54.     When a consumer uses Grubhub to order from a restaurant who has willingly partnered with Grubhub, the order is conveyed directly to the restaurant, who can quickly confirm their ability to fill the order, begin preparing the food right away, and coordinate with Grubhub to ensure the food is picked up and delivered as soon as it is ready.

55.     But when a consumer places an order with a restaurant who has been included on Grubhub's platform without permission, the process becomes—in Grubhub's own words—"expensive for everyone, a suboptimal diner experience and rife with operational challenges."

56.     The order doesn't go directly to the restaurant, it goes instead to a Grubhub driver, who must first figure out how to contact the restaurant and place the order. Sometimes it's possible to place orders with the restaurant by phone, but other times the restaurant will only accept orders in person. The extra steps often lead to mistakes in customers' orders and often the restaurant won't receive the order at all.

57.     Another source of mistakes and confusion are the menus Grubhub includes on its app and website. Because Grubhub is not coordinating with the restaurant, it often uses outdated menus—causing restaurants to receive numerous orders for food that is sold out or that they no longer make. Grubhub drivers must then contact the customer by phone to ask for a substitute, order something similar, or cancel the customer's order.

58.     Even when food orders are successfully placed, pickup and delivery are not as well coordinated as they are when the restaurant is a willing participant. Drivers may be late to pick up the food, if they show up at all, and customers' food is more likely to be cold or otherwise unsatisfactory when it is eventually delivered.

59.     Restaurants also can struggle to keep up with the extra demand created by Grubhub's unauthorized use of their names and logos. These are restaurants who have chosen not to partner with Grubhub, often because they do not need or want more

orders. Processing and fulfilling Grubhub orders requires restaurants to divert employees from other vital functions and can lead to long wait times and worse customer service for the restaurants' existing customers.

60.     Due to the harm Grubhub's conduct causes restaurants, if at any step in the process the restaurant realizes an order comes from Grubhub, it may refuse to complete the order. In that event, customers are rarely told what happened—instead Grubhub cancels the order without explanation or assigns it to another Grubhub driver for another attempt.

61.     Drivers also don't like the added hassle and inherent dishonesty in these orders and will often refuse to fill the order or abandon it midway through. Again, customers are rarely told what happened, their orders are simply cancelled without explanation or assigned to another driver, resulting in further delay.

62.     So while consumers believe they are getting a "direct line to the kitchen," what they actually receive are all the "inefficiencies, inaccuracies and frustrations associated with paper menus and phone orders"—and then some. Or as Grubhub puts it, "there tends to be more problems with these orders."

63.     The poor service that Grubhub provides while using restaurants' names and logos hurts the restaurants' reputations. "We look bad to our customers," is how one restaurant owner put it to *The Philadelphia Inquirer*. Those customers understandably blame the restaurant, at least in part, and frequently leave bad online reviews for the restaurant as a result of their experience ordering through Grubhub.

64. To make matter worse, restaurants don't even realize that a customer has had a bad experience. Grubhub hides its involvement from the restaurants and doesn't share any negative feedback it receives from the customer. The restaurant cannot communicate with the customer to explain what happened or offer to make it right. Grubhub is depriving restaurants of control over customer satisfaction—the lifeblood of any successful local establishment.

### 5.     Grubhub Diverts and Impairs Demand for Local Restaurants

65. When deciding which restaurants to list on its platform without permission, Grubhub targets restaurants that local diners frequently search for online.

66. Grubhub then uses search engine marketing and optimizations to divert that restaurant's potential customers to its own business. As Grubhub boasted to shareholders, "if a diner is looking online for a specific restaurant, they can find us in SEM or SEO now as a non-partnered restaurants, whereas before they couldn't."

67. In many instances, Grubhub has made arrangements with Google so that the "Order Delivery" button on restaurant's Google business listing links to Grubhub's delivery service rather than to the restaurant's delivery service.

68. The strategy has been successful, as unsuspecting consumers think they are ordering from the restaurant's authorized delivery service and become Grubhub customers instead. Grubhub has confirmed to investors that, in this way, non-partnered restaurants "help us acquire new diners."

69. But by diverting consumer demand for non-partnered restaurants, Grubhub's conduct hurts restaurants in several ways.

70.     It takes business from the restaurants' own takeout and delivery services, which a customer is less likely to see or recognize as distinct from Grubhub's offering.

71.     It takes business away from the restaurants' authorized third-party delivery services, which can include up-to-date menus and work closely with the restaurant to ensure customer satisfaction.

72.     And it costs the restaurants business and impairs future demand. Once Grubhub has the potential customer's attention, it encourages that customer to consider ordering from one of its partnered restaurants instead—which will give Grubhub a bigger cut of the business. As Grubhub admits to investors, "we're going to do whatever we can to route demand to partnered restaurants."

73.     One of the ways Grubhub does this is by posting menus with inflated prices. As one commenter wrote on a forum for Grubhub drivers, "From non-partnered restaurants, [Grubhub] makes its money by marking up the menu prices. Many restaurants don't like this because it makes their food appear more expensive to the customer, who may then choose to never visit in-person."

74.     Another way is to create landing pages for unaffiliated restaurants that claim the restaurant is not accepting orders and suggesting one of Grubhub's partner restaurants as an alternative. Grubhub does this even if the restaurant is open and accepting orders.

E. **Grubhub Knows It Is Harming Restaurants and Uses That Harm to Force Restaurants Into Unwanted Partnerships**

75.     Grubhub knows it's hurting restaurants. When the company began including unaffiliated restaurants on its platform, it told shareholders that the result would be a bad experience for these restaurants and a bad experience for their customers. Grubhub also affirmed that is still believed partnering with restaurants, rather than using their names and logos without consent, was the right path forward.

76.     One of the reasons Grubhub chose to deliberately create a bad experience for restaurants and their customers was to force those restaurants into partnerships. As Grubhub's CEO told investors, "it's our job over time to make those restaurants – turn those restaurants into partnered restaurants."

77.     When investors asked why restaurants would choose to become partners after being listed on Grubhub's webpages and mobile apps without their permission, Grubhub's CEO answered, "it's because the diner experience sucks."

78.     In other words, Grubhub is intentionally harming restaurants' local reputations and then offering them a partnership to make the harm stop—a partnership where Grubhub will keep 30% or more from each order.

79.     That's why, as soon as Grubhub started harming restaurants' reputations by using their names and logos without permission, it also announced it was "deploying a sales team to try to convert these restaurants to partners, because it's a better experience for anyone involved."

## PLAINTIFFS' EXPERIENCE

**A.    Lynn Scott, LLC**

80.    Plaintiff Lynn Scott, LLC, is the owner of Antonia's, a popular local restaurant that serves Italian-inspired fare in the heart of downtown Hillsborough, North Carolina.

81.    Grubhub approached Lynn Scott about entering into a partnership that would authorize Grubhub to list Antonia's on its platform, but Lynn Scott declined Grubhub's offer. Grubhub decided to list Antonia's on its platform anyway.

82.    Grubhub created at least two webpages for Antonia's that consumers could visit when they search for the restaurant online. A screenshot from one of those

websites is shown below. The other webpage is similar but includes the Seamless brand instead of the Grubhub brand in the upper left-hand corner.



83.     These webpages use Antonia's name and logo and suggest an affiliation between Antonia's and Grubhub that does not exist.

84.     The FAQs at the bottom of the page further suggest an affiliation that does

not exist. They read:

## FAQs

**Q) Does Antonia's Restaurant (101 N Churton S) deliver?**
A) Yes, Antonia's Restaurant (101 N Churton S) delivery is available on Grubhub.

**Q) Does Antonia's Restaurant (101 N Churton S) offer contact-free delivery?**
A) Yes, Antonia's Restaurant (101 N Churton S) provides contact-free delivery with Grubhub.

85.     In fact, Antonia's is not working "with Grubhub" to offer or provide food

delivery services. Grubhub is using Antonia's name and logo without permission, and

consumers who order through Grubhub will not be getting the "direct line to the

kitchen" and coordinated delivery they are expecting.

86.     Grubhub's unauthorized listing of Antonia's on its platform is misleading

and confusing for consumers, who reasonably expect that Grubhub is working

cooperatively with Antonia's to ensure the consumer receives accurate, reliable, and

timely service.

87.     For instance, the menu items that Grubhub lists for Antonia's can be out-

of-date, causing customers to place orders that Antonia's cannot fulfill and leading to

bad customer experiences that reflect poorly on Antonia's.

88.     Lynn Scott has asked Grubhub to both stop listing Antonia's on its

platform and stop re-directing clicks on Antonia's Google profile to Grubhub's

business, but Grubhub has not stopped.

**B.** **The Farmer's Wife, LLC**

89.     The Farmer's Wife is a popular local restaurant based in Sebastopol, California, and owned by The Farmer's Wife, LLC. The restaurant is a regular participant in local farmer's markets and is known for its use of fresh, locally sourced, organic ingredients.

90.     Plaintiff recently learned that Grubhub is listing The Farmer's Wife on its platform without permission. The following screenshots are taken from Grubhub's mobile app.



91.     Grubhub has also created at least two webpages for The Farmer's Wife

that use the restaurants' name and logo in a similar manner, offer the same menu, and

suggest an affiliation that does not exist.

92.     The menu that Grubhub attributes to The Farmer's Wife on its platform is inaccurate and suggests that The Farmer's Wife is offering to make food that it does not actually make and has never made.

93.     As a result, when a customer orders from The Farmer's Wife on Grubhub, that order cannot be fulfilled—resulting in a poor customer experience that reflects badly on The Farmer's Wife.

94.     Grubhub's inaccurate menu also poses a threat to The Farmer's Wife's hard-earned reputation because the foods listed are inconsistent with The Farmer's Wife commitment to organic, locally sourced fresh food.

95.     The Farmer's Wife has asked Grubhub to remove its listings, but Grubhub has not complied and continues to use The Farmer's Wife's name and logo without authorization.

96.     Several other restauranteurs have similarly reported that Grubhub will not stop using their restaurants' names and logos, even after they complained to Grubhub on multiple occasions.

## CLASS ALLEGATIONS

97.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs seek to pursue their claims on behalf a class of similarly situated persons. The parameters of the class may be refined through discovery and will be subject to Court approval and modification, but for purposes of this complaint, Plaintiffs propose the following class definition:

All restaurants included without their permission on Grubhub, Seamless, LevelUp, AllMenus, MenuPages, or any other part of the Grubhub online platform.

98.    Plaintiffs further propose that the following persons be excluded from any certified class: Defendant, its current or former officers, directors, legal representatives, and employees; any and all parent companies, subsidiaries, predecessors, successors, or assigns of Defendant; and all judicial officers and associated court staff assigned to this case and their immediate family members.

99.    The proposed class meets the requirements for class certification pursuant to Rule 23(a) and Rule 23(b)(3).

100.    *Numerosity*: The class is sufficiently numerous such that individual joinders are impracticable. In the fourth quarter of 2019 alone, Grubhub listed some 150,000 restaurants on its platform without permission.

101.    *Commonality:* Plaintiffs' and class members' claims against Grubhub present common questions of law and fact, including:

a.   Is Grubhub's inclusion of unaffiliated restaurants on its platform likely to cause confusion as to the restaurants' affiliation with Grubhub?

b.   Is Grubhub's inclusion of unaffiliated restaurants on its platform likely to cause confusion as to the origin, sponsorship, or approval of the food service offered through Grubhub's website and mobile apps?

c.   How much has Grubhub profited by including unaffiliated restaurants on its website and mobile apps without permission?

102.    *Typicality:* Plaintiffs' claims against Grubhub are typical of the class's claims. Plaintiffs and class members were all included on Grubhub's food-services platform without permission, each has claims against Grubhub arising from the unauthorized use of their names and logos, and each of those claims will depend on a common showing that consumers are likely to be confused by Grubhub's inclusion of unaffiliated restaurants on its website.

103.    *Adequacy*: Plaintiffs will fairly and adequately protect the class's interests. Plaintiffs' interests are aligned with those of the class, as each seeks to hold Grubhub liable for including them on its online platform without their permission, and Plaintiffs have retained experienced counsel to represent the class's interests.

104.    *Predominance*: The common questions identified above are likely to predominate at trial when compared to any individualized issues that may arise. The major issues upon which Grubhub's liability depends—in particular, the issue of whether Grubhub's inclusion of unaffiliated restaurants on its website and mobile apps is likely to cause customer confusion—are susceptible to generalized proof that could establish Grubhub's liability as to all class members through a single trial.

105.    *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Successfully prosecuting class members' claims will likely take several years and involve extensive pre-trial litigation against a $7 billion company, large amounts of electronically stored information, and multiple expert witnesses. These are matters that are best handled through unified class-wide representation, which can be conducted on a contingency basis and offers

class members economies of scale unavailable in individual proceedings. A class action also has the benefit of comprehensive supervision by a single court and will avoid the risk of inconsistent results.

## FIRST CAUSE OF ACTION
### Violation of Lanham Act – Section 43(a)

106.     Plaintiffs allege this cause of action on behalf of themselves and the proposed class, and in so doing, incorporate all preceding allegations.

107.     Grubhub's conduct as alleged herein violates Section 43(a) of the Lanham Act, which prohibits the use in commerce of any word, term, name, symbol, or device that is likely to cause confusion as to Grubhub's affiliation, connection, or association with another business, or as to the origin, sponsorship, or approval of Grubhub's goods, services, or commercial activities by another business. 15 U.S.C. § 1125(a). Grubhub's inclusion of unaffiliated restaurants on its online platform—which includes making landing pages for the restaurants with their names, logos, addresses, menu items, and prices for each menu item, as well as using search-engine optimizations and marketing to draw consumer attention to those pages—is an act occurring in interstate commerce and in connection with goods or services.

108.     Grubhub's inclusion of unaffiliated restaurants on its online platform is likely to cause—and has in fact caused—customer confusion as to those restaurants' affiliation, connection, or association with Grubhub, as well as the source of the services offered through Grubhub's website and mobile apps. Consumers reasonably believe that Grubhub's inclusion of restaurants on its webpages and mobile apps means that

Grubhub has partnered with and is working cooperatively with those restaurants to provide accurate, reliable, and timely food services.

109.    Grubhub's inclusion of unaffiliated restaurants on its online platform is also likely to cause—and has in fact caused—customer confusion as to those restaurants' sponsorship or approval of Grubhub's commercial activities. Consumers reasonably believe that restaurants have approved Grubhub's offering and are willing and able to prepare food for them as part of the service Grubhub is offering.

110.    In fact, Plaintiffs and class members are not affiliated with Grubhub, have not approved Grubhub's offerings, and have suffered damages as a result of customer confusion, including harm to their reputations and loss of customers diverted by Grubhub's deceptive practices.

111.    Pursuant to 15 U.S.C. § 1117, Plaintiffs and class members seek an award of defendant's profits, damages according to proof and as the Court may allow, costs of suit, and attorneys' fees.

112.    Plaintiffs and class members also seek injunctive relief prohibiting Grubhub from including unaffiliated restaurants on its platform pursuant to 15 U.S.C. § 1116, or requiring Grubhub to take appropriate affirmative steps to avoid customer confusion.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and those similarly situated, request the following relief:

a.   A determination that this action may be maintained as a class action;

b. An award of damages according to proof, including statutory damages, treble damages, and punitive damages where allowed by law;

c. Appropriate injunctive and equitable relief;

d. Pre-judgment interest and post-judgment interest, as provided by law;

e. Attorneys' fees and costs of suit, including expert fees and costs;

f. Such further relief as the Court may find just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury for all issues so triable.

Dated: October 26, 2020

/s/ Elizabeth A. Fegan

Elizabeth A. Fegan
**Fegan Scott LLC**
150 S. Wacker Dr.
24th Floor
Chicago, IL 60606
Telephone: (312) 741-1019
Facsimile: (312) 264-0100
beth@feganscott.com

Steven M. Tindall (*pro hac vice forthcoming*)
Geoffrey A. Munroe (*pro hac vice forthcoming*)
Alex J. Bukac (*pro hac vice forthcoming*)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
smt@classlawgroup.com
gam@classlawgroup.com
ajb@classlawgroup.com

*Counsel for Plaintiffs and the Proposed Class*