IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LYNN SCOTT, LLC, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 20-cv-6334 |
| | ) | |
| v. | ) | Honorable LaShonda A. Hunt |
| | ) | |
| GRUBHUB INC., | ) | Magistrate Judge Gabriel A. Fuentes |
| | ) | |
| Defendant. | ) | |

### GRUBHUB'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE PLAINTIFFS' CLASS ALLEGATIONS

Isaac J. Colunga
Sophie E. Honeyman
Rachel Smoot
**TAFT STETTINIUS & HOLLISTER LLP**
111 E. Wacker Dr., Ste. 2600
Chicago, Illinois 60601
(312) 527-4000
icolunga@taftlaw.com
shoneyman@taftlaw.com
rsmoot@taftlaw.com

*Counsel for Defendant Grubhub Inc.*

Plaintiffs own eleven restaurants that Grubhub previously listed on its online food ordering and delivery platform, which allowed customers to place and receive orders from those restaurants using Grubhub. Plaintiffs sued Grubhub pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq.*, alleging that Grubhub falsely advertised and infringed upon Plaintiffs' trademarks because Grubhub put the restaurants' names, logos, and menus on Grubhub without a contract in place. Plaintiffs have styled their complaint as a "class action," even though a "class" based on similar allegations under the Lanham Act has never been certified, for good reason.

Lanham Act violations cannot be shown through generalized proof. Class actions thrive on generalized proof, allowing similarly-situated plaintiffs to litigate their underlying claims in a single forum. But where the underlying claims require courts to conduct several individual inquiries for every putative class member, predominance under Rule 23(b)(3) cannot be met and a class cannot be certified. The Lanham Act gives rise to precisely that type of unique underlying claim. Courts have described Lanham Act claims as "multi-faceted," "highly individualized," and "inappropriate for class treatment" because the evidence necessary to prove such claims varies for each particular plaintiff. For trademark infringement and false affiliation, every plaintiff must show its mark is protectable, which alone requires the court to weigh numerous plaintiff-specific factors to determine if each asserted mark is inherently distinctive or acquired secondary meaning. Every plaintiff must also prove likelihood of confusion, which requires multiple fact-intensive inquiries and the weighing of seven non-exhaustive factors. For false advertising, every plaintiff must show a false statement of fact, that the statement actually deceived or has the tendency to deceive a substantial segment of the target audience, that the deception was material, and that Grubhub caused the false statement to enter interstate commerce. Then, for each claim, every plaintiff must show actual damages flowing directly from Grubhub's use of the asserted mark. The predominance of these individual inquiries, which courts are required to analyze without exception, is why Plaintiffs cannot satisfy Rule 23(b)(3).

1

Adequacy of representation is also a problem under Rule 23(a)(4) because Plaintiffs' class definitions create a scenario where Plaintiffs' own interests will be pitted against the interests of putative class members. In class actions, a named plaintiff must suffer the same injuries and share the same remedial interests as those of the putative class. Competitive interests, on the other hand, get in the way and create fundamental conflicts. According to Plaintiffs' class definitions, the putative classes are comprised of every restaurant Grubhub listed without a contract in place—more than 300,000 restaurants nationwide. This of course would include restaurants that Plaintiffs compete with in their same geographic locations, restaurants that have similar marks, and restaurants that eventually chose to partner with Grubhub. Competing restaurants within the same class, or restaurants with similar marks in the same class, will necessarily fight over who has the senior mark and who may have suffered more damages. In addition, restaurants that have since partnered with Grubhub will be at odds with non-partnered restaurants because the partnered restaurants will not want a negative judgment entered against their now business partner, Grubhub. These issues present serious concerns with the adequacy of Plaintiffs' representation, and add yet another layer to the hyper-focused individual inquiries the Court must undertake if this case proceeds as a class action.

## I.    BACKGROUND

In the Seventh Circuit, motions to strike class allegations are commonly utilized even before a plaintiff moves for class certification. This sentiment stems from Rule 23(c)(1)(A)'s requirement that courts determine whether to certify a class as soon as practicable after a person sues as a class representative. Here, class-wide discovery has been ongoing since January 17, 2024, (Dkt. #110), and written discovery is almost finished. Grubhub has spent an exorbitant amount of time, money, and resources litigating this case to date. The Court need not wait any longer to decide the legal questions of (1) whether this case may proceed as a class action under Rule 23 where individualized inquiries predominate, and (2) whether Plaintiffs are adequate class

representatives. Based on the prevailing law, the answers to these questions is clearly "no." Certifying a class in this case would be unmanageable and improper.

Following Grubhub's partially-granted motion to dismiss, Plaintiffs filed a consolidated amended complaint on September 24, 2024. (Dkt. #171). Count I alleges false affiliation under Section 43(a)(1)(A) of the Lanham Act, which prohibits the use of qualifying unregistered trademarks in a manner likely to cause confusion. 15 U.S.C. § 1125(a)(1)(A). Count II alleges false advertising under Section 43(a)(1)(B) of the Lanham Act, which prohibits false or misleading advertisements about the nature, characteristics, qualities, or geographic origin of a person's goods, services, or commercial activities. 15 U.S.C. § 1125(a)(1)(B). Under Count III, two of the named Plaintiffs, Iowa City Coffee Company ("ICCC") and MF Tasty LLC ("MFT"), separately allege trademark infringement pursuant to Section 32 of the Lanham Act, which prohibits the use of registered trademarks in a manner likely to cause confusion. 15 U.S.C. § 1114(1).

Plaintiffs seek to represent a class defined as "[a]ll businesses whose names or logos were used without their permission on Grubhub, Seamless, LevelUp, AllMenus, MenuPages, or any other part of the Grubhub online platform." (Compl. ¶ 51). Plaintiffs also seek to represent a registered mark subclass comprised of "[a]ll class members whose names or logos were registered with the United States Patent and Trademark Office when they were used without their permission on Grubhub, Seamless, LevelUp, AllMenus, MenuPages, or any other part of the Grubhub online platform." (*Id*. at 52).

To prove their claims, *each* Plaintiff and putative class member must prove the protectability, strength, and distinctiveness of their asserted marks; prove likelihood of confusion using the Seventh Circuit's seven-factor test; and prove false advertising using the Seventh Circuit's five-factor test. There is no common proof, which creates a serious problem for any plaintiff trying to pursue a class action under the Lanham Act. *See Vulcan Golf, LLC v. Google Inc.*, 254 F.R.D. 521, 534 (N.D. Ill. 2008) ("individual issues predominate" and the "certification of any class related to the trademark claims would simply be unmanageable"); *FPX, LLC v. Google, Inc.*, 276 F.R.D. 543, 551 (E.D. Tex.

3

2011) ("the complicated and highly fact-intensive analysis" shows "that this case is inappropriate for class treatment"); *Chambers v. Time Warner*, 2003 WL 749422, at *8 (S.D.N.Y. Mar. 5, 2003) (certification "would be an impossible task" due to "a predominant focus on individual issues"). Class actions only work with generalizations, but in the complex world of trademark law, "generalizations are especially dangerous." *Walt-West Enters., Inc. v. Gannett Co., Inc.*, 695 F.2d 1050, 1055 (7th Cir. 1982).

## II. LEGAL STANDARD

In the Seventh Circuit, motions to strike class allegations under Rule 23 are "useful in bringing into focus issues the resolution of which governs the broader question of whether a class action is maintainable, and a number of courts in this circuit have employed it." *Board of Educ. of Tp. High Sch. v. Climatemp, Inc.*, 1981 WL 2033, at *2 (N.D. Ill. Feb. 20, 1981). Courts thus recognize that motions to strike under Rule 23 are appropriate to determine whether a case will proceed as a class action, especially where "the class allegations are facially and inherently deficient," making class certification improper. *Harris v. Rust-Oleum Corp.*, 2022 WL 952743, at *3 (N.D. Ill. Mar. 30, 2022); *Wolfkiel v. Intersections Ins. Servs.*, 303 F.R.D. 287, 293-94 (N.D. Ill. 2014).

Rule 23 motions to strike are encouraged and typically granted where sufficient discovery has occurred and where "the underlying class claims either require individualized inquiries, there are substantive variations in the governing law, or both." *Harris*, 2022 WL 952743, at *3; *Womick v. Kroger Co.*, 2022 WL 1266630, at *2 (S.D. Ill. Apr. 28, 2022); *Hill v. Wells Fargo*, 946 F. Supp. 2d 817, 832 (N.D. Ill. 2013). A court may strike class allegations "even before the plaintiff files a motion requesting certification." *Kasalo v. Harris & Harris*, 656 F.3d 557, 563 (7th Cir. 2011). Faced with a motion to strike, "the burden remains on the plaintiff to establish that the suit may be maintained as a class action." *Wright v. Family Dollar, Inc.*, 2010 WL 4962838, at *2 (N.D. Ill. Nov. 30, 2010) (citing *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675-76 (7th Cir. 2001)).

4

### III. ARGUMENT

**A. Plaintiffs Cannot Satisfy Rule 23(b)(3) Because Individual Inquiries Predominate False Affiliation and Trademark Infringement Claims.**

Rule 23(b)(3) demands that "questions of law or fact common to class members predominate over any questions affecting only individual members." Rule 23(b)(3) thus prohibits class certification where "members of a proposed class will need to present evidence that varies from member to member." *Smith-Brown v. Ulta Beauty, Inc.*, 335 F.R.D. 521, 531 (N.D. Ill. 2020). Predominance under Rule 23(b)(3) is a demanding inquiry. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997). Courts must analyze each element of an asserted claim *and* the proof necessary to succeed on the claim to assess whether the case can be managed as a class action. *Oshana v. Coca-Cola Bottling Co.*, 225 F.R.D. 575, 584 (N.D. Ill. 2005), *aff'd*, 472 F.3d 506 (7th Cir. 2006).

Here, Plaintiffs want the Court to ignore the fact that false affiliation and trademark infringement claims are notoriously complex, which is why a class has never been certified based on similar allegations. To show liability for these claims, each restaurant must first prove, independently, that its asserted mark is protectable under the Lanham Act. *Phoenix Ent. Partners v. Rumsey*, 829 F.3d 817, 822 (7th Cir. 2016). Protectability is an individualized question of fact requiring multiple "complicated and highly fact-intensive" questions specific to each asserted mark. *FPX*, 276 F.R.D. at 551. Assuming this element is satisfied, each restaurant must then prove that Grubhub's use of the protectable mark is likely to cause confusion among a significant number of the restaurants' customers in each unique location and market. *MJ & Partners Rest. Ltd. P'Ship v. Zadikoff*, 10 F. Supp. 2d 922, 927 (N.D. Ill. 1998). This is yet another element requiring numerous fact-intensive inquiries for each restaurant's customers at the time of the alleged infringement. As courts have already recognized, "individual issues predominate as to the trademark-related claims and the certification of any class related to the trademark claims would simply be unmanageable." *Vulcan*, 254 F.R.D. at 534.

5

### 1. Plaintiffs' allegations of inherent distinctiveness are not enough to justify class treatment, since inherent distinctiveness is unique to each asserted mark and can't be shown through generalized proof.

Perhaps recognizing the difficulties in showing protectability, Plaintiffs allege their marks are protectable on the grounds that they are "inherently distinctive." Right now, these are just allegations. But, significantly, whether a mark is inherently distinctive is a highly individualized question of fact that requires much more than a party's mere allegations. *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 420, 423-24 (7th Cir. 2019).

Three kinds of marks are considered inherently distinctive and protectable upon first use: fanciful, arbitrary, and suggestive. 1 McCarthy on Trademarks & Unfair Competition § 3:1 ("McCarthy"). None of the named Plaintiffs' marks can be considered fanciful, since they do not "consist of invented words that have been created for the sole purpose of serving as a trademark," such as "EXXON" for gasoline or "CLOROX" for cleaning products. *Id.* § 11:5. Likewise, none of the named Plaintiffs' marks can be considered arbitrary, since they do not consist of "words in common linguistic use but which, when used with the goods or services in issue, neither suggest nor describe any ingredient, quality or characteristic of those goods or services," such as "APPLE" for electronics or "SHELL" for gasoline. *Id.* § 11:11. Proceeding as a class action on the basis of inherent distinctiveness therefore means that each individual Plaintiff and class member must prove that its asserted mark is ***suggestive***, meaning that the mark "suggests, but does not directly and immediately describe, some aspect of the goods or services." *Id.* § 11:62. Suggestive marks require "imagination, thought, and perception to reach a conclusion about the nature of the goods." *In re N.C. Lottery*, 866 F.3d 1363, 1367 (Fed. Cir. 2017). Examples of suggestive marks include "COPPERTONE" for tanning oil (suggests results after using product) and "GORILLA" for children's playground equipment (suggests equipment is strong and durable). McCarthy §§ 11:64, 11:72. Here, each Plaintiff and putative class member must go through this analysis and present evidence to prove their mark's inherent distinctiveness. At the same time, many

of them must somehow overcome Grubhub's assertion that their marks are "merely descriptive," which adds another fact-intensive layer to the Court's required analysis.

A mark is ***merely descriptive*** "if it immediately conveys information concerning a feature, quality, or characteristic of the goods or services." *N.C. Lottery*, 866 F.3d at 1367. Examples of descriptive marks include "SCOOP" for ice cream (describes a common size and measuring unit for ice cream), "COLUMBIANO COFFEE HOUSE" for coffee services (describes coffee type served in coffee house), and "BEEF & BREW" for restaurant services (describes food type and drink served). McCarthy § 11:24. Merely descriptive terms, as well as personal name marks (*e.g.*, Plaintiff Lynn Scott's Italian restaurant, "Antonia's"), are not protectable under the Lanham Act unless they have acquired distinctiveness through secondary meaning in its community. *Real Foods Ltd. v. Frito-Lay N. Am., Inc.*, 906 F.3d 965, 972 (Fed. Cir. 2018). A term has achieved secondary meaning "if through its use, the public has come to associate the term with a product or service." *Miyano Mach. USA, Inc. v. MiyanoHitec Mach., Inc.*, 576 F. Supp. 2d 868, 881 (N.D. Ill. 2008). This is yet another fact-intensive individual inquiry. *Platinum Home Mortg. Corp. v. Platinum Fin. Grp.*, 149 F.3d 722, 728 (7th Cir. 1998).

Plaintiffs' false affiliation and trademark infringement claims thus turn on whether their asserted marks are deemed suggestive or merely descriptive. Courts recognize that "the line between descriptiveness and suggestiveness can be difficult to draw," and cannot be assessed in the abstract or on the basis of guesswork. *Uncommon*, 926 F.3d at 420-21. Indeed, these "abstract categories" are simply "analytical touchstones for a much more sophisticated inquiry" that must be made on an individual level. *Walt-West*, 695 F.2d at 1057. Whether a mark is suggestive or merely descriptive must therefore be evaluated in relation to the context in which the mark is used, the possible significance the term would have to the average consumer of the goods, and the particular goods at issue. *See, e.g.*, *In re Yarnell Ice Cream, LLC*, 2019 WL 3183842, at *7 (TTAB 2019). For this, the Court will need to consider many contextual factors for each Plaintiff and putative class member, such as the extent of third-party use of similar marks for similar goods; the level of

7

imagination necessary to reach a conclusion as to the nature of the goods; how, and how often, the relevant market uses the words or mark in question; the likelihood that the mark will conjure up other arbitrary connotations separate from what the mark conveys about the product at issue; the probability that consumers will regard the mark as a symbol of origin or as self-laudatory; and more. *Uncommon*, 926 F.3d at 421-22; *Real Foods*, 906 F.3d at 975; *J & J Snack Foods, Corp. v. Earthgrains Co.*, 220 F. Supp. 2d 358, 376-78 (D.N.J. 2002). And still, the amount and type of evidence required to satisfy these inquiries "depends on the facts of each case and the nature of the mark" at hand. *Yarnell*, 2019 WL 3183842, at *12.

Further, seeing that many of Plaintiffs' and the putative class members' marks are merely descriptive at best, Plaintiffs' burden to prove secondary meaning becomes "a heavy one." *Eagle Snacks, Inc. v. Nabisco Brands, Inc.*, 625 F. Supp. 571, 582 (D.N.J. 1985). Analyzing whether secondary meaning exists is a fact-intensive inquiry that "must be decided on the facts relating to the impact which the term had on the public consciousness." *Id*. For every one of the approximately 300,000 asserted marks that fall into the personal name or descriptive category, the Court will need to determine whether the mark achieved secondary meaning in the relevant community by the time of the alleged infringement. *Mil-Mar*, 75 F.3d at 1156. This will inevitably result in individualized hearings and mini-trials for each class member, requiring detailed proof and analysis of several unique considerations, including the exclusivity, length, and manner of each use of the mark; the first use of the mark for restaurant services; the amount and manner of advertising in connection with the asserted mark; the volume of sales and number of customers for each restaurant; whether each restaurant was established in the relevant market and how; any evidence of intentional copying; and whether the mark was previously denied registration with the USPTO. *Miyano*, 576 F. Supp. 2d at 881; *Platinum*, 149 F.3d at 728; *Competitive Edge, Inc. v. Staples, Inc.*, 763 F. Supp. 2d 997, 1014 (N.D. Ill. 2010); *Eldon Indus., Inc. v. Rubbermaid, Inc.*, 735 F. Supp. 786, 839 (N.D. Ill. 1990); *Brookfield Comms., Inc. v. West Coast Ent. Grp.*, 174

8

F.3d 1036, 1047 (9th Cir. 1999). Conducting these individual inquiries "entails vigorous evidentiary requirements" typically supported by expert surveys. *RVC Floor Décor v. Floor & Decor Outlets, Inc.*, 2024 WL 2847139, at *11 (E.D.N.Y. June 5, 2024).

In sum, trademark claims like these are simply not susceptible to the kind of generalized proof that class actions require. Instead, the Court's initial task of determining protectability will be overwhelmed by fact-intensive inquiries for 300,000 unique asserted marks. Evidence of protectability alone will vary on an individual level and will require the Court to conduct, without exaggeration, hundreds of thousands of hearings on the distinctiveness of each asserted mark. This, alone, precludes certification and justifies striking the class allegations. *Vulcan*, 254 F.R.D. at 528; *see also FPX*, 276 F.R.D. at 551 ("[T]he highly individualized analyses required to determine merely the validity of the Plaintiffs' putative marks militates against class certification.").

**2. Determining whether likelihood of confusion exists cannot be done on a class-wide basis, since it requires numerous fact-intensive inquiries specific to each class member's restaurant and customers.**

After proving protectability, each Plaintiff and putative class member must then individually prove that Grubhub's use of each protectable mark is likely to cause confusion. *MJ & Partners*, 10 F. Supp. 2d at 927. This presents yet another individualized, factual question based on real market conditions and real consumer behavior. To determine likelihood of confusion, courts in the Seventh Circuit consider seven non-exhaustive factors with respect to the relevant market, including "the area and manner of concurrent use," "the degree of care likely to be exercised by consumers," "the strength of the complainant's mark," "actual confusion," and "an intent on the part of the alleged infringer to palm off its products as those of another." *Helene Curtis Indus., Inc. v. Church & Dwight Co.*, 560 F.2d 1325, 1330 (7th Cir. 1977). "Evidence of third party use of similar marks on similar goods" is also relevant at this step, since it reveals that the asserted mark "is relatively weak and entitled to only a narrow scope of protection." McCarthy § 11:88; *Eastland Music Grp., LLC v. Lionsgate Ent., Inc.*, 707 F.3d 869, 871 (7th Cir. 2013).

Should this case proceed as a class action, the Court would be required to determine likelihood of confusion for each asserted mark by conducting numerous detailed analyses into the strength of each mark, each restaurant's specific customers, the degree of care exercised by those customers, and whether any experienced actual confusion. Further, since Grubhub is a hyper-localized business, it's critical to recognize that diners search for restaurants based on geographic location, and that each restaurant will have different customers based on its unique location, market, and cuisine type. The Court would also be required to investigate third-party use for hundreds of thousands of putative class members, which would be completely unmanageable. In fact, for the named Plaintiffs alone, a simple USPTO search reveals dozens of examples where restaurants have registered marks similar to the named Plaintiffs' marks, and Plaintiffs have admitted they are not affiliated with those marks. This calls into question the strength of Plaintiffs' marks and their claim of priority of use. *See* McCarthy § 11:88; *Eastland*, 707 F.3d at 871.

At the end of the day, likelihood of confusion is not susceptible to generalized proof, and "the highly complex and fact-intensive inquiry that is required to determine whether a likelihood of confusion exists with regard to each of the" Plaintiffs' and putative class members' marks underscores that Plaintiffs' claims are not appropriate for class treatment. *FPX*, 276 F.R.D. at 550; *Chambers*, 2003 WL 749422, at *8.

### B. Plaintiffs Cannot Satisfy Rule 23(b)(3) Because Individualized Inquiries Also Predominate False Advertising Claims.

With respect to false advertising, each of the named Plaintiffs and putative class members must ultimately prove (i) that Grubhub made a false statement, (ii) that materially deceived or had the tendency to materially deceive (iii) a substantial segment of each Plaintiff's or the putative class member's customers, such (iv) that Grubhub's statement influenced the customer's purchasing decision which, in turn, (v) directly damaged the Plaintiff or class member. *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999). Satisfying these elements depends on exactly what each particular customer saw, where they saw it, and when; whether the customer was materially

10

deceived and how; whether the alleged deception caused the customer to divert sales from the Plaintiff's or putative class member's restaurant and, if so, to whom; and whether the restaurant was actually harmed as a result of the alleged diversion and, if so, how. Such questions, "by their nature, are unique because they involve highly specific and individual factors that vary" by class member, by restaurant, by asserted mark, by advertisement, by geographic location, by market, by sophistication of the target audience, and by the audience's familiarity with Grubhub and the restaurant at issue. *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 190 F.R.D. 422, 426 (S.D. Tex. 1999), *aff'd*, 301 F.3d 329 (5th Cir. 2002); *Eli Lilly & Co. v. Arla Foods, Inc.*, 893 F.3d 375, 382 (7th Cir. 2018) (evidence required varies based on the specific circumstances). Plaintiffs usually answer these questions using an expert witness who applies plaintiff-specific survey evidence from the trademark holder's particular region and customer base—*not* with generalized assertions.

It would be unmanageable for this Court to evaluate the elements and proof of false advertising for over 300,000 putative class members, as this would again require individual hearings and mini-trials where each class member must present individualized evidence of what its specific customer base "understands to be the meaning of [the] label or advertisement" that is allegedly deceptive. *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 747 (7th Cir. 2008). The Court would also be required to investigate each restaurant's target audience, relevant market, advertising efforts, and actual customer base, as well as those customers' subjective beliefs and purchase history. None of these inquiries can be resolved through generalized proof. Instead, the entire false advertising analysis is dominated by individualized, fact-intensive inquiries, thus making the class action process untenable. *Oshana*, 225 F.R.D. at 580-81; *Harris*, 2022 WL 952743, at *3.

### C. Every Plaintiff and Class Member Must Also Show Damages, which is Not a Generalized Inquiry in Trademark Litigation.

Whether for trademark infringement, false affiliation, or false advertising, each Plaintiff and putative class member must additionally prove that Grubhub's alleged conduct directly resulted in actual injury. *See Harper v. Sheriff of Cook Cnty.*, 581 F.3d

11

511, 515 (7th Cir. 2009); *Hot Wax*, 191 F.3d at 820. This creates another fundamental problem for Plaintiffs because the predominance prong of Rule 23(b)(3) cannot be satisfied unless damages are consistent and can be measured across the entire class. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). This is not one of those cases.

Plaintiffs seek disgorgement of Grubhub's profits, monetary damages, and injunctive relief. (Compl. ¶¶ 208-09, 215, 223-24). Each determination of damages will turn on fact-intensive proof individual to each Plaintiff and putative class member, their respective restaurant, and their restaurant's respective customers. The Court will need to consider, for example, how many orders each restaurant received through Grubhub and when; the cost of each order and any associated fees; lost profits for each class member; to what extent that particular restaurant's reputation was harmed and how; and more. In fact, courts have already acknowledged that "whether to order disgorgement of profits necessarily involves an individualized, plaintiff-by-plaintiff weighing of the equities." *Sugai Prods. v. Kona Kai Farms*, 1997 U.S. Dist. LEXIS 21503, at *43 (D. Haw. Nov. 19, 1997). Making it more difficult, damages are seldom recovered for false advertising "since it is difficult to isolate the effect the challenged advertisement has on market share." Theodora McCormick, *The Rise And Possible Fall of Class Actions In False Advertising Litigation*, Corp. Couns. Bus. J. (Aug. 18, 2012). Establishing and calculating damages for any of Plaintiffs' claims thus necessitates even more individualized determinations, such that "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class." *Comcast*, 569 U.S. at 34.

### D. Rule 23(b)(3) Further Precludes Certification Because Resolution of Grubhub's Defenses Require Fact-Intensive Inquiries Specific to Each Class Member and Pursuant to Conflicting State Laws.

It is also significant that Grubhub's defenses require individual resolution pursuant to conflicting state laws. *See Vulcan*, 254 F.R.D. at 531; *Harris*, 2022 WL 952743, at *3; *FPX*, 276 F.R.D. at 551. Where class members are subject to individualized defenses and are governed by different legal rules, as is the case here, class certification is improper. *Id.* at 532; *Frompovicz v. Niagara Bottling, LLC*, 420 F. Supp. 3d 361, 370

(E.D. Pa. 2019). For example, one defense against Plaintiffs' claims is that Grubhub incorporated notices on non-contracted restaurants' listings that expressly disclaimed any affiliation. In fact, documents produced by Plaintiffs thus far show the following disclaimer next to their restaurant's listing:

> DISCLAIMER: Information shown may not reflect recent changes. Check with this restaurant for current pricing and menu information. A listing on Allmenus.com does not necessarily reflect our affiliation with or endorsement of the listed restaurant, or the listed restaurant's endorsement of Allmenus.com. Please tell us by clicking here if you know that any of the information shown is incorrect. For more information, please read our Terms and Conditions.

*See* (**Grp. Ex. 1**). Consequently, class members cannot claim to have been injured as a result of any order placed through Grubhub while this disclaimer was in place. This highly individualized situation further exemplifies how this case is ill-suited for class treatment.

Grubhub has also asserted that some or all of the class claims are barred by the applicable statute-of-limitations. (Dkt. #184 at 80). This affirmative defense requires individual resolution based on when each class member learned of Grubhub's alleged listing of its restaurant. Keep in mind that Grubhub did not list all non-contracted restaurants on its platform at the same time. Grubhub began listing non-contracted restaurants in certain markets in Spring 2019, and continued to list and remove them during the course of a few years. The Lanham Act does not expressly contain a statute of limitations, however, so courts apply that of the most analogous state law. *Hot Wax*, 191 F.3d at 821. Class members' claims will therefore be governed by inconsistent statutory schemes. For instance, Illinois courts have applied the Illinois Consumer Fraud and Deceptive Business Practices Act's *three*-year statute of limitations to Lanham Act claims, *see Tireboots by Universal Canvas, Inc. v. Tiresocks, Inc.*, 2021 WL 5833985, at *2 (N.D. Ill. Dec. 9, 2021), while Pennsylvania courts have applied the Pennsylvania Unfair Trade Practices and Consumer Protection Law's *six*-year statute of limitations, *Frompovicz*, 420 F. Supp. 3d at 370-71. In Nevada, courts have applied Nevada's Deceptive Trade Practices Act's *four*-year statute of limitations. *See Ratchford v. CVSM LLC*, 2020 WL 9127818, at *3 (D. Nev. Sept. 30, 2020). Even just deciding which state law is most analogous to the

specific Lanham Act claim in question requires courts to make case-specific determinations. *Woodard v. Jackson*, 2004 WL 771244, at *6-7 (S.D. Ind. Mar. 25, 2004) (discussing whether to apply Indiana's two-year or six-year limitations period).

But that is not the only statutory difference relevant to this case. Class treatment is also inappropriate because the availability of injunctive relief is controlled by conflicting state laws. At least 12 states—including Illinois, California (where Luu and The Farmer's Wife reside), Oregon (where MFT and Tate reside), and Iowa (where ICCC resides)—have enacted legislation that prohibits listing non-contracted restaurants on third-party food delivery platforms. *See, e.g.*, 815 ILCS 338/10 (eff. Jan. 1, 2023). To the extent Plaintiffs and putative class members in these states seek injunctive relief, as their complaint alleges, such claims would be mooted since there is no possibility that Grubhub could re-list non-contracted restaurants. As such, whether each putative class member's state has enacted a law similar to 815 ILCS 338/10 involves yet another inquiry incapable of class-wide proof that will affect various class members' entitlement to injunctive relief differently. These considerations make class treatment inappropriate, and they add yet another unique layer to an already fact-intensive analysis. *FPX*, 276 F.R.D. at 55; *Harris*, 2022 WL 952743, at *3.

### E. Plaintiffs and the Putative Class Members Have Divergent Interests, and the Proposed Classes are Impermissibly Antagonistic.

Finally, Plaintiffs and the putative class have divergent interests, making Plaintiffs inadequate class representatives under Rule 23(a)(4). Plaintiffs' class definitions encompass a variety of restaurants from all over the country. As defined, the classes would include restaurants with whom Plaintiffs compete for business in their same geographic regions, as well as restaurants with different business interests because they are located in geographic areas where Plaintiffs do not conduct business at all. These conflicts make Plaintiffs' interests impermissibly divergent from those of the putative class. *B. Sanfield, Inc. v. Marshall Field & Co.*, 1991 WL 166942, at *2 (N.D. Ill. Feb. 25, 1991) (plaintiff's interests adverse to class members with whom it competes in its location, and distinct in

14

geographic areas where "[p]laintiff does no business"); *Vulcan*, 254 F.R.D. at 526 (class inappropriate due to "antagonistic or conflicting claims"). Further complicating matters, Plaintiffs and putative class members may also be competing with one another for priority of use, since Plaintiffs contend that their marks are inherently distinctive and part of that inquiry will look at whether each Plaintiff was *first* to use its mark in connection with its goods. *Brookfield*, 174 F.3d at 1047. If another class member uses a similar mark, that class member may not only have priority (and a stronger case for distinctiveness), but may also have a cross-claim for infringement against a fellow class member.

As another example of divergent interests, discovery has revealed that MFT didn't suffer *any* injury because MFT's food cart did not receive a single order through Grubhub. *See* (**Ex. 2**). In this way, MFT cannot adequately represent any injured putative class members. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). Similarly, ICCC, Luu, and Tate were previously contracted restaurants, and Luu and Tate both allege that the infringing conduct started *during* their respective partnerships with Grubhub. (Compl. ¶¶ 123-24, 190-91). *See Frompovicz*, 420 F. Supp. 3d at 370 n.6. Moreover, a significant number of putative class members are now contracted with Grubhub, and would not want to see an adverse judgment against Grubhub. These divergent interests must be explored by examining each individual restaurant, and they illustrate further reasons why this case is not suitable for class treatment.

## CONCLUSION

For the reasons set forth above, Grubhub respectfully requests that the Court enter an Order striking Plaintiffs' class allegations from their consolidated amended complaint and granting Grubhub all other and further relief the Court deems proper.

DATED: November 8, 2024               Respectfully submitted,

                                       **GRUBHUB INC.**

                                       By: */s/ Isaac J. Colunga*
                                       One of Its Attorneys


Isaac J. Colunga
Sophie E. Honeyman
Rachel Smoot
**TAFT STETTINIUS & HOLLISTER LLP**
111 E. Wacker Dr., Ste. 2600
Chicago, Illinois 60601
(312) 527-4000
icolunga@taftlaw.com
shoneyman@taftlaw.com
rsmoot@taftlaw.com

*Counsel for Defendant Grubhub Inc.*

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on November 8, 2024, she caused the foregoing ***Memorandum of Law in Support of Grubhub's Motion to Strike Plaintiffs' Class Allegations*** to be filed with the Clerk of the United States District Court for the Northern District of Illinois, a copy of which will be served on all counsel of record by the Clerk's CM/ECF system.

*/s/ Sophie E. Honeyman*