# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LYNN SCOTT, LLC, et al., on behalf of themselves and all others similarly situated, | Case No. 1:20-cv-06334 |
| | Honorable LaShonda A. Hunt |
| Plaintiffs, | |
| v. | |
| GRUBHUB INC., | |
| Defendant. | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND......................................................2

      A.     THE FILING OF THE ACTION...........................................................................2

      B.     THE PARTIES ENGAGED IN EXTENSIVE MOTION PRACTICE.................3

      C.     THE PARTIES ENGAGED IN EXTENSIVE DISCOVERY .............................4

      D.     THE PARTIES ENGAGED IN ARM'S LENGTH AND HARD-FOUGHT SETTLEMENT NEGOTIATIONS OVER THE COURSE OF A YEAR ............5

III.    SUMMARY OF SETTLEMENT TERMS........................................................................6

      A.     THE CLASS DEFINITION.................................................................................6

      B.     THE SETTLEMENT BENEFITS .......................................................................6

      C.     INJUNCTIVE RELIEF .......................................................................................8

      D.     RELEASE .............................................................................................................9

      E.     CLASS NOTICE, REQUESTS FOR EXCLUSION, AND OBJECTIONS .........9

      F.     ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS ...........................................................................................................11

IV.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT ...........12

      A.     LEGAL STANDARD.........................................................................................12

      B.     THE COURT WILL LIKELY BE ABLE TO APPROVE THE SETTLEMENT AS FAIR, REASONABLE, AND ADEQUATE.................................................13

            1.     Plaintiffs and Proposed Class Counsel are Adequate ..............................14

            2.     The Settlement Agreement was Negotiated at Arm's Length .................14

            3.     The Settlement Treats Class Members Equitably Relative to Each Other.......................................................................................................16

            4.     The relief provided by the Settlement Agreement is Adequate...............16

                  *a.*     *The costs, risks, and delay of trial and appeal* .............................17

b. The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims ...................................................................................18

c. The terms of any proposed award of attorney's fees, including timing of payment .........................................................................19

d. Any agreement required to be identified under Rule 23(e)(3) .......21

5. The Strength of Plaintiffs' Case Compared Against the Amount of Settlement ...................................................................................21

6. Likely Complexity, Length, and Expense of Continued Litigation .........22

7. Opposition to the Settlement Agreement ...................................................23

8. The Opinion of Experienced Counsel .......................................................23

9. The Stage of the Proceedings and the Amount of Discovery Completed ...................................................................................................23

V. CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE .....24

A. RULE 23(A)'S REQUIREMENTS ARE SATISFIED .......................................25

1. Numerosity ..................................................................................................25

2. Commonality ...............................................................................................25

3. Typicality ....................................................................................................26

4. Adequacy of Representation .......................................................................27

B. RULE 23(B)(3) REQUIREMENTS ARE SATISFIED .......................................28

C. ROSEMARY M. RIVAS AND ELIZABETH FEGAN SHOULD BE APPOINTED AS CLASS COUNSEL .................................................................31

D. THE PROPOSED NOTICE PLAN SHOULD BE APPROVED .......................32

E. EPIQ SHOULD BE APPOINTED AS SETTLEMENT ADMINISTRATOR ...33

VI. PROPOSED SCHEDULE TO IMPLEMENT SETTLEMENT .......................................34

VII.    CONCLUSION ...................................................................................................................35

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Air Lines Stewards & Stewardesses Ass'n, Local 550 v. Am. Airlines, Inc.*,
    455 F.2d 101 (7th Cir. 1972) ................................................................................. 33

*Alliance to End Repression v. Rochford*,
    565 F.2d 975 (7th Cir. 1977) ................................................................................. 24

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ............................................................................... 25, 27, 29

*Armstrong v. Bd. of Sch. Dirs.*,
    616 F.2d 305 (7th Cir. 1980) ....................................................... 12, 13, 23, 24

*Arreola v. Godinez*,
    546 F.3d 788 (7th Cir. 2008) ................................................................................. 24

*Balderrama-Baca v. Clarence Davids & Co.*,
    No. 15 C 5873, 2020 WL 10963973 (N.D. Ill. Nov. 18, 2020) ................................ 12

*Beaton v. SpeedyPC Software*,
    907 F.3d 1018 (7th Cir. 2018) ............................................................................... 25

*Bell v. PNC Bank, Nat'l Ass'n*,
    800 F.3d 360 (7th Cir. 2015) ................................................................................. 25

*BNVS Transp. LLC v. Trucking, LLC*,
    No. 1:20-cv-04305, 2023 WL 11983614 (N.D. Ill. Feb. 22, 2023) ......................... 20

*Burnett v. Conseco Life Ins. Co.*,
    No. 1:18-cv-00200-JPH-DML, 2020 WL 4207787 (S.D. Ind. July 22, 2020) ...... 14, 24, 26, 27

*Califano v. Yamasaki*,
    442 U.S. 682 (1979) ............................................................................................. 12

*Cook v. Niedert*,
    142 F.3d 1004 (7th Cir. 1998) ............................................................................... 20

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
    No. 11-cv-4462, 2015 WL 1399367 (N.D. Ill. Mar. 23, 2015) ............................. 20

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) ................................................................................... 15

iv

*De La Fuente v. Stokely-Van Camp, Inc.*,
  713 F.2d 225 (7th Cir. 1983) ........................................................................27

*E.E.O.C. v. Hiram Walker & Sons*,
  768 F.2d 884 (7th Cir. 1985) ........................................................................12

*Gautreaux v. Pierce*,
  690 F.2d 616 (7th Cir. 1982) ........................................................................23

*Gen. Tel. Co. of the SouthWest v. Falcon*,
  457 U.S. 147 (1982) ......................................................................................12

*Gomez v. St. Vincent Health, Inc.*,
  649 F.3d 583 (7th Cir. 2011) ........................................................................27

*Hinman v. M and M Rental Ctr. Inc.*,
  545 F. Supp. 2d 802 (N.D. Ill. 2008) ...........................................................27

*Howard v. Cook Cty. Sheriff's Office*,
  989 F.3d 587 (7th Cir. 2021) ........................................................................29

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
  270 F.R.D. 330 (N.D. Ill. 2010) ...................................................................22

*In re Corrugated Container Antitrust Litig.*,
  659 F.2d 1322 (5th Cir. 1981) ......................................................................16

*In re Gen. Motors Corp. Engine Interchange Litig.*,
  594 F.2d 1106 (7th Cir. 1979) ......................................................................21

*In re Newbridge Networks Sec. Litig.*,
  No. CIV. A. 94-1678-LFO, 1998 WL 765724 (D.D.C. Oct. 22, 1998) ...................17

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) ..................................................................13, 23

*Karpilovsky v. All Web Leads, Inc.*,
  No. 17 C 1307, 2018 WL 3108884 (N.D. Ill. June 25, 2018) ..................25

*Keele v. Wexler*,
  149 F.3d 589 (7th Cir.1998) .........................................................................27

*Kolinek v. Walgreen Co.*,
  311 F.R.D. 483 (N.D. Ill. 2015) ...................................................................19

v

*Kusinski v. Macneil Auto. Prod. Ltd.*,
  No. 17-cv-3618, 2018 WL 3814303 (N.D. Ill. Aug. 9, 2018) ................................................19

*McCabe v. Crawford & Co.*,
  210 F.R.D. 631 (N.D. Ill. 2002) ..........................................................................................25

*McPhail v. First Command Fin. Planning, Inc.*,
  No. 05cv179-IEG-JMA, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ..................................17

*Milliron v. T-Mobile USA, Inc.*,
  No. 08-4149, 2009 WL 3345762 (D.N.J. Sept. 14, 2009) ....................................................15

*Mulvania v. Sheriff of Rock Island Cty.*,
  850 F.3d 849 (7th Cir. 2017).................................................................................................25

*Muro v. Target Corp.*,
  580 F.3d 485 (7th Cir. 2009)...........................................................................................26, 27

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972)..................................................................................................16

*Nicholson v. UTI Worldwide, Inc.*,
  No. 3:09-cv-722-JPG-DGW, 2011 WL 1775726 (S.D. Ill. May 10, 2011) ..........................29

*Oshana v. Coca-Cola Co.*,
  472 F.3d 506 (7th Cir. 2006).................................................................................................27

*Parker v. Risk Mgmt. Alternatives, Inc.*,
  206 F.R.D. 211 (N.D. Ill. 2002) ..........................................................................................26

*Phillips v. Sheriff of Cook Cty.*,
  828 F.3d 541 (7th Cir. 2016).................................................................................................26

*Retired Chi. Police Ass'n v. City of Chi.*,
  7 F.3d 584 (7th Cir. 1993).....................................................................................................28

*Reynolds v. Beneficial Nat'l Bank*,
  288 F.3d 277 (7th Cir. 2002)...........................................................................................12, 22

*Roberts v. Graphic Packaging Int'l, LLC*,
  No. 3:21-cv-00750-DWD, 2024 WL 3373780 (S.D. Ill. July 11, 2024) ...............................13

*Rosario v. Livaditis*,
  963 F.2d 1013 (7th Cir. 1992)..........................................................................................27, 28

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*,
    No. EDCV08-482-VAP (OPx), 2010 WL 2486346 (C.D. Cal. June 15, 2010) .....................15

*Santiago v. City of Chicago*,
    19 F.4th 1010 (7th Cir. 2021) ................................................................................................24

*Savanna Group, Inc. v. Trynex, Inc.*,
    No. 10-cv-7995, 2013 WL 66181 (N.D. Ill. Jan. 4, 2013)......................................................25

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ...............................................................................17, 22

*Simpson v. Dart*,
    23 F.4th 706 (7th Cir. 2022) ..................................................................................................24

*Smith v. Sprint Communications Co.*, L.P.,
    387 F.3d 612 (7th Cir. 2004).................................................................................................25

*Steele v. GE Money Bank*,
    No. 1:08-civ-1880, 2011 WL 13266350 (N.D. Ill. May 17, 2011)..........................................15

*Swanson v. Am. Consumer Indus., Inc.*,
    415 F.2d 1326 (7th Cir. 1969).................................................................................................25

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006)......................................................................................14, 15, 21

*T.K. Through Leshore v. Bytedance Tech. Co.*,
    No. 19-cv-7195, 2022 WL 888943 (N.D. Ill. Mar. 25, 2022) ................................................15

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)............................................................................................................26

*Williams v. Chartwell Fin. Servs., Ltd.*,
    204 F.3d 748 (7th Cir. 2000)...................................................................................................26

*Wright v. Nationstar Mortage LLC*,
    No. 14 C 10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) ...............................................15

**Rules**

Fed. R. Civ. P. 23 ...........................................................................................................*passim*

**Other Authorities**

2 McLaughlin on Class Actions, § 6:7 (21st ed. 2024)...................................................................15

3 Newberg on Class Actions § 8:32 (4th ed. 2010) ......................................................................32

Manual for Complex Litigation, Fourth, § 21.632..........................................................................16

Plaintiffs and proposed Class Representatives Lynn Scott, LLC; The Farmer's Wife, LLC; Thuan Luu; Old Crown, Inc.; 132 Degrees, LLC; MDR, LLC; Momobbq, Co., LLC; MF Tasty LLC; Iowa City Coffee Company; and Jack Tate d/b/a The Tin Pig, LLC ("Plaintiffs"), submit this memorandum in support of their Unopposed Motion for Preliminary Approval of Class Action Settlement.

## I. **<u>INTRODUCTION</u>**

Plaintiffs are pleased to report that after nearly five years of litigation, the Parties have reached a proposed Class Action Settlement Agreement[1] ("Settlement" or "Settlement Agreement") that is ready to undergo the court-approval process. As the Court is aware, Defendant Grubhub Inc. ("Defendant" or "Grubhub") operates a popular online food delivery platform that connects diners with local restaurants. This action arises from Grubhub's decision to place thousands of restaurants on its platform without a contract in place. Plaintiffs allege that Defendant's actions confused consumers into believing that the non-contracted restaurants were affiliated with Grubhub and endorsed its delivery services. Plaintiffs allege they were damaged as a result. For its part—and making this Settlement fair and reasonable—Grubhub denies that Plaintiffs' claims are meritorious, denies that the Plaintiffs, or anyone else, were damaged as a result of Grubhub's conduct, and denies that it is liable to Plaintiffs or any member of the proposed Settlement Class.

While Plaintiffs believe that both the facts and the law support their claims and that nationwide certification is appropriate, the proposed Settlement is poised to deliver meaningful relief without further risk, delay and expense. The Settlement provides a non-reversionary cash

---

[1] Unless otherwise stated, all capitalized terms herein have the same meaning as defined in the Settlement Agreement.

1

payment of $7,154,586 that will be used to payments to Settlement Class Members, cover the costs of Class Notice and settlement administration, and any attorneys' fees, reimbursement of reasonable costs and service awards approved by the Court.

The proposed Settlement was reached after several years of litigation, including significant motion practice and extensive discovery. Based on the work in the case, the Parties understood the strengths and weaknesses of their respective positions and therefore were able to intelligently participate in settlement negotiations. After multiple settlement attempts, including under the direction and guidance of Magistrate Judge Gabriel A. Fuentes, they reached the Settlement.

Plaintiffs respectfully request that the Court preliminarily approve the Settlement, direct notice to the Settlement Class, appoint Class Counsel under Rule 23(g), and set a schedule for final approval. Given the meaningful benefits available to Settlement Class Members, the risks of certifying a nationwide litigation class, establishing Defendant's liability and proving damages, and the length of time and the costs that would be required to complete the litigation through trial and appeals, Plaintiffs respectfully submit that the proposed Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class Members. A proposed Order granting preliminary approval accompanies Plaintiffs' motion.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   THE FILING OF THE ACTION

Plaintiffs filed this Action on October 26, 2020, following Grubhub's addition of thousands of restaurants to its online food ordering and delivery platform without having contracts with those restaurants. (ECF No. 1.) This initiative was known internally as the "Place & Pay"

program because Grubhub placed and paid for orders at the non-contracted restaurants without always disclosing the orders originated from Grubhub.

In both the initial and operative consolidated complaint, Plaintiffs alleged claims on behalf of a nationwide class against Grubhub under the Lanham Act for False Affiliation (§43(a)(1)(A)), False Advertising (§43(a)(1)(B)), and Trademark Infringement (§32). (ECF Nos. 1, 171.) Plaintiffs allege, among other things, that the inclusion of non-contracted restaurants caused consumer confusion regarding affiliation or endorsement and resulted in loss of sales and operational challenges that harmed their reputations. (ECF Nos. 1, 171.) Plaintiffs sought damages and equitable relief in the form of disgorgement of profits and an injunction prohibiting Grubhub's behavior. (ECF Nos. 1 at ¶ 7, 171 at ¶ 12.) Grubhub answered the complaint, denying all liability and denying all of Plaintiffs' material allegations. (ECF No. 184.)

## B.      THE PARTIES ENGAGED IN EXTENSIVE MOTION PRACTICE

In January 2021, shortly after the Action was filed, Grubhub moved to stay the case pending settlement of another proposed class action filed in the District of Colorado titled, *CO Craft, LLC et al. v. Grubhub, Inc.*, No. 1:20-cv-01327-NYW-NRN (D. Colo.) ("*CO Craft*"). (ECF No. 16.) Plaintiffs vigorously opposed the stay, but Judge Aspen granted it pending the outcome of *CO Craft.* (ECF No. 22.)

Plaintiffs then intervened and objected to the proposed settlement in *CO Craft* because it provided no monetary relief to restaurants; the court there denied preliminary approval.[2] The parties in *CO Craft* presented a second proposed settlement for preliminary approval and

---

[2] *CO Craft, LLC et al. v. Grubhub, Inc.*, No. 1:20-cv-01327-NYW-NRN (D. Colo.), ECF No. 63.

Plaintiffs again objected to it; the court there denied preliminary approval a second time.[3] Ultimately, the *CO Craft* plaintiffs voluntarily dismissed their individual claims.[4]

On July 24, 2023, the Parties here agreed to lift the stay entered by Judge Aspen. (ECF No. 77.) Shortly thereafter, however, Grubhub renewed its efforts to stay the case (ECF No. 88), which Plaintiffs again opposed. (ECF No. 90.) Grubhub ultimately withdrew its stay request (ECF No. 92) and on November 9, 2023 moved to dismiss. (ECF No. 94) Additionally, one week later, Grubhub moved to stay class-wide discovery pending resolution of its motion to dismiss. (ECF No. 98.) Plaintiffs opposed both efforts, and on December 20, 2023, the Court denied Grubhub's discovery stay request, allowing class-wide discovery to proceed. (ECF No. 110.) On August 6, 2024, the Court denied in part and granted in part Grubhub's motion to dismiss, with leave to amend. (ECF No. 152.) Plaintiffs amended the complaint to address the Court's ruling, and the Court ordered Grubhub to respond to the amended complaint. (ECF No. 172.)

Grubhub moved to strike Plaintiffs' class allegations on November 8, 2024. (ECF No. 191.) Among other things, Grubhub argued that individual issues predominated over common issues making class certification inappropriate. (ECF No. 192.) Plaintiffs filed a robust opposition, emphasizing their collaboration with experts to develop potential class-wide damage models, including for the disgorgement of Grubhub's profits. (ECF No. 216.) The Parties were awaiting the Court's ruling when they reached the Settlement.

## C.    THE PARTIES ENGAGED IN EXTENSIVE DISCOVERY

Plaintiffs served several rounds of written discovery, including six sets of requests for production, two sets of interrogatories, and requests for admission for a total of 141 written

---

[3] *Id.*, ECF No. 91.
[4] *Id.*, ECF No. 139.

discovery requests. (Declaration of Rosemary M. Rivas in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement ("Rivas Decl."), ¶ 12.) Plaintiffs sought and obtained, among other things, data relating to consumer confusion and financial data relevant to their prayer for disgorgement of profits. (*Id.*) The Parties met and conferred extensively regarding Plaintiffs' discovery requests and Grubhub's responses thereto. (*Id.*) The Parties resolved some issues on their own but on other issues, Plaintiffs filed motions to compel before Magistrate Judge Fuentes. (*Id.*; *see also* ECF Nos. 156, 165, 211, and 248.)

Plaintiffs reviewed more than 90,000 pages of documents produced by Grubhub such as internal communications involving several Grubhub employees about the Place & Pay program, marketing presentations, and financial presentations regarding the Place & Pay program. (Rivas Decl., ¶ 13.) Plaintiffs also deposed Grubhub employee Mary Rappa, a marketing manager at Grubhub, and Plaintiffs were in the process of preparing for the deposition of Grubhub's 30b6 witnesses when they reached the Settlement. (*Id.*)

For their part, Plaintiffs produced over 1,000 documents to Grubhub and were preparing to sit for deposition. (Rivas Decl., ¶ 14.) Each plaintiff also provided written responses to Defendant's First Set of Requests for Production, First Set of Interrogatories, and First Set of Requests for Admission for each plaintiff; and two plaintiffs were served with additional written discovery requests. (*Id.*) Collectively, Plaintiffs responded to 658 written discovery requests. (*Id.*)

### D. THE PARTIES ENGAGED IN ARM'S LENGTH AND HARD-FOUGHT SETTLEMENT NEGOTIATIONS OVER THE COURSE OF A YEAR

Recognizing the risks and expense of continued litigation, the Parties engaged in settlement discussions over the course of a year. (Rivas Decl., ¶ 15.) Their first attempt at settlement involved engaging in private mediation on May 22, 2024 before experienced mediator Hunter Hughes, Esq. (*Id.*) The mediation did not result in a resolution. (*Id.*)

After the Court largely denied Grubhub's motion to dismiss and the Parties completed their briefing on Grubhub's motion to strike the class allegations, the Parties participated in a settlement conference on February 5, 2025 before Magistrate Judge Fuentes. (Rivas Decl., ¶ 16.) In advance of the settlement conference, they exchanged detailed settlement statements regarding the strengths and weaknesses of the claims and defenses. (*Id.*) While no resolution was reached that day, negotiations continued. (*Id.*) The Parties participated in a second settlement conference before Magistrate Judge Fuentes on May 22, 2025. (*Id.,* ¶ 17) At that session, the Parties reached a resolution on the material terms of settlement. (*Id.*) The Parties subsequently memorialized the terms of their settlement in the Settlement Agreement, attached as Exhibit 1 to the Rivas Declaration. (*Id.*)

## III.   SUMMARY OF SETTLEMENT TERMS

### A.   THE CLASS DEFINITION

The Settlement Class is defined as all "businesses whose names or logos were used on Grubhub or any other part of the Grubhub Platform, including AllMenus, Eat24, Seamless, Tapingo, LevelUp, OrderUp, MenuPages, and BiteGrabber from January 1, 2019 through April 30, 2024 without a contract with Grubhub." S.A., § II, ¶ 27.[5]

### B.   THE SETTLEMENT BENEFITS

Grubhub will pay $7,154,586 in cash (the "Settlement Fund") which will be used to make payments to Settlement Class Members, cover the costs of Class Notice and settlement

---

[5] Excluded from the Settlement Class are: corporate officers, members of the board of directors, and senior management of Defendant; any and all judges and justices, and chambers' staff, assigned to hear or adjudicate any aspect of this litigation; any members of the Settlement Class that opt out prior to the opt out deadline; any entity in which Defendant has a controlling interest, and their legal representatives, officers, directors, employees, assigns and successors; and Class Counsel and all counsel of record in the Action. S.A., § II, ¶ 27.

administration, the costs of preparing and sending notices to all Attorneys General pursuant to the Class Action Fairness Act, Plaintiffs' attorneys' fees and costs as approved by the Court, and service awards to Plaintiffs as approved by the Court. S.A., § II, ¶ 29. The Settlement Fund is non-reversionary. (*Id.*)

Each Settlement Class Member who submits a Valid Claim Form will receive compensation pursuant to the proposed Plan of Allocation which provides for two cash payments: (1) an initial amount of $50.00, and (2) an additional pro-rata amount based on the length of time a non-contracted restaurant was on the Grubhub platform. The amount of the payments will be calculated by the Settlement Administrator based on the Defendant's records indicating the duration of each restaurant's inclusion in the Place & Pay program. Plan of Allocation ("POA"), ¶ 4.

Since Grubhub's records may not have the most current contact information for the Settlement Class and some businesses may have closed, Plaintiffs propose distributing the Net Settlement Fund through a simple claims process. (Rivas Decl., ¶ 18.) Settlement Class Members who are current partners and for whom Grubhub has valid email addresses are asked to provide their business name and contact information, select their preferred payment method, and sign the form. (S.A., Ex. A.) Restaurants who are not currently contracted with Grubhub and for whom Grubhub only has a physical address will also be asked to provide their EIN or Federal Tax Identification Number to prevent fraud. (*Id.*) A link to file the Claim Form will be electronically embedded in the email notice, while a QR code will be available on the post card notice. Settlement Class Members may also access a hard copy of the Claim Form online or request one from the Settlement Administrator.

The Plan of Allocation also includes an opportunity for Settlement Class Members to appeal any denial of their claim. POA, ¶ 6. Settlement Class Members will be able to submit claims beginning on the Notice Date (November 3, 2025) through March 4, 2026 under the proposed schedule. S.A., § VI, ¶ 2; Part V below.

Based on Plaintiffs' calculations, below is a chart showing the estimated amount of cash payments based on claims rates of 1%, 2%, 5%, and 10%:

| Claims Rate | Initial payment | Median Pro-rata Payment | Median Total Payout |
|---|---|---|---|
| 1% | $50.00 | $635.42 | $685.42 |
| 2% | $50.00 | $299.11 | $349.11 |
| 5% | $50.00 | $97.33 | $147.33 |
| 10% | $50.00 | $30.06 | $80.06 |

Pursuant to the Settlement Agreement, Defendant will pay the Settlement Amount of $7,154,586 within 35 days of entry of the Preliminary Approval Order. (S.A. § V, ¶ 1.)

### C.    INJUNCTIVE RELIEF

As part of the settlement, Grubhub acknowledges that it is subject to a permanent injunction entered in *Federal Trade Commission et al. v. Grubhub Inc. et al.*, No. 1:24-cv-12923 (N.D. Ill., Dec. 31, 2024) (the "FTC Settlement"). That injunction permanently prohibits Grubhub from advertising, marketing, displaying landing pages, listing menus or other content (such as open or closed status), or offering for sale or selling on Grubhub any perishable good or any good or service, from any restaurant of any kind that does not have an agreement with Grubhub to sell or offer to sell its goods or services on Grubhub. The injunctive relief set forth in the FTC Settlement is materially similar to the relief sought by Plaintiffs in this action. As part of the present settlement, Defendant has expressly agreed to comply with the obligations imposed by the FTC Settlement. (S.A. § V, ¶ 7.)

**D.      RELEASE**

In exchange for the Settlement Benefits, the Plaintiffs and Settlement Class Members release their claims against Grubhub and its officers, directors, legal representatives, successors, subsidiaries, assigns, affiliated brands, and insurers. (S.A. §§ II, ¶ 15 and VIII, ¶ 1.) The release is limited to "any alleged claims of Grubhub adding restaurants to the Grubhub Platform without permission" as alleged in the Action. (S.A. § II, ¶ 23.)

**E.      CLASS NOTICE, REQUESTS FOR EXCLUSION, AND OBJECTIONS**

The notice plan provides direct email notice to members of the Settlement Class for whom Grubhub has current email addresses, and direct postcard notice to members of the Settlement Class for whom Grubhub has a physical mailing address but not an email address or to whom the email notice is returned as undeliverable after multiple attempts. (S.A., § VII, ¶ 3; accompanying Declaration of Cameron R. Azari, Esq. Regarding Notice Plan ("Azari Decl."), ¶ 20.) Grubhub will provide the Settlement Administrator with a list of the most update-to-date contact information for the Settlement Class in its possession. (S.A., § VII, ¶ 2.)

A summary of the Settlement's material terms will be sent via First-Class U.S. mail in a postcard format and via email as reflected in Exhibit B to the Settlement Agreement, and shall include, among other information: a description of the material terms of this Settlement; a date by which Settlement Class Members may object to this Settlement; a date by which members of the Settlement Class may exclude themselves from this Settlement, the date upon which the Final Approval Hearing shall occur; and the address of the Settlement Website at which Settlement Class Members may access the Settlement Agreement, Claim Form, Long Form Notice (Exhibit C to the Settlement Agreement), and other related documents and information and file claims.

(S.A., § VII, ¶ 3.)  The Settlement Administrator will also run a digital and social media campaign to supplement the direct notice, as described in Paragraphs 26-31 of the Azari Declaration.

>  According to Azari Declaration:
>
>  The Notice Plan is designed to reach the greatest practicable number of Settlement Class Members.  Given our experience with similar notice efforts, we expect the Notice Plan's individual notice efforts via email and/or mail to identified members of the Settlement Class will reach approximately 80-90% of the identified Settlement Class.  The reach will be further enhanced by digital and social media notice and a Settlement Website.  In my experience, the Notice Plan is consistent with other court-approved notice programs, is the best notice practicable under the circumstances of this case and has been designed to satisfy the requirements of due process, including its "desire to actually inform" requirement.

(Azari Decl., ¶ 18.)

Members of the Settlement Class may request exclusion by submitting such request in writing as set forth in the Class Notice. (S.A., § VIII, ¶ 2.) Any request for exclusion[6] must be submitted no later than the date specified in the Preliminary Approval Order, which will be no earlier than sixty days after the conclusion of the Notice Period (30 days after the Settlement Administrator begins to send notice). (*Id*.) Any person or entity who submits a timely request for exclusion may not file an objection to the Settlement and shall be deemed to have waived any rights or benefits under the Settlement Agreement. (S.A., § VIII, ¶ 3.)

---

[6] Any request for exclusion shall (i) state for each entity requesting exclusion, the entity's full name, physical address, email address, and phone number, (ii) the name of the Action (*Lynn Scott, LLC, et al. v. Grubhub Inc*., Case No. 1:20-CV-06334-LAH-GAF (N.D. Ill.)), (iii) a specific statement of the entity's intent to be excluded from the Settlement, (iv) the identity of the entity's counsel, if represented, and, (v)  the printed name and signature of the entity's authorized representative and the date on which the request was signed. (S.A., § VIII, ¶ 2.) Failure to comply with these requirements or to timely submit the request for exclusion will result in the person or entity being bound by the terms of the Settlement Agreement. (S.A., § VIII, ¶ 1.)

Settlement Class Members may comment on or object[7] to the Settlement, including the requested attorneys' fees, reimbursement of expenses, or service awards. (S.A., § IX, ¶1.) Settlement Class Members must submit their objections by mail or online no later than the date specified in the Preliminary Approval Order, which shall be no earlier than sixty days after the conclusion of the Notice Period. (S.A., § IX, ¶ 3.)

## F.    ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS

Class Counsel have worked on this case since 2020 without compensation. They will file a motion for an award of attorneys' fees in an amount not to exceed 33.3% of the Settlement Fund (or $2,382,477) as well as reimbursement of the reasonable litigation expenses incurred in the prosecution of the Action, not to exceed $150,000.00. (S.A., § X, ¶ 1.) This is not a clear sailing agreement, as Grubhub retains the right to oppose Class Counsel's application for an award of attorneys' fees and reimbursement of expenses. (S.A., § X, ¶ 1.)

---

[7] The comment or objection must state (i) the name and case number of this lawsuit; (ii) the Settlement Class Member's business name, mailing address, and email address or telephone number; (iii) the full name of the individual submitting the comment or objection on behalf of the Settlement Class Member and, if the Class Member is not a natural person, a description of the individual's authority to act on behalf of the Class Member; (iv) the Settlement Class Member must state whether the objection applies only to the objector, to a specific subset of the Class, or to the entire Class; (v) all reasons for the objection or comment and sufficient proof establishing that he or she is the proprietor of the Settlement Class Member; (vi) a statement identifying all class action settlements the proprietor of the Settlement Class Member or their attorney has objected to or commented on in the last five years; (vii) whether the Settlement Class Member intends to appear at the Final Approval Hearing; (viii) the name and contact information of any and all attorneys representing, advising, or assisting the Settlement Class Member, including any counsel who may be entitled to compensation for any reason related to the objection or comment; (ix) whether any attorney will appear on the Settlement Class Member's behalf at the Final Approval Hearing, and if so the identity of that attorney; and (x) the signature of the proprietor of the Settlement Class Member. (S.A., § IX, ¶ 3.)

Class Counsel will also file with the Court a motion for approval of service awards for Plaintiffs in *Lynn Scott* who are serving as class representatives in an amount not to exceed $20,000.00 per Plaintiff, and a service award of $7,000.00 for Plaintiff Tin Pig. (S.A., § X, ¶ 4.)

## IV.     THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

### A.     LEGAL STANDARD

Class actions were designed as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Gen. Tel. Co. of the SouthWest v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). Any settlement that results in the dismissal of a class action requires court approval. *See* Fed. R. Civ. P. 23(e); *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002).

The approval process includes two steps. *See Balderrama-Baca v. Clarence Davids & Co.,* No. 15 C 5873, 2020 WL 10963973, at *1 (N.D. Ill. Nov. 18, 2020) (citing *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 314 (7th Cir. 1980), overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998)). First, the court conducts a preliminary review to determine whether the proposed settlement is "within the range of possible approval" and whether there is reason to notify the class members of the proposed settlement and proceed with a fairness hearing. *Armstrong*, 616 F.2d at 314. If preliminary approval is granted, the class members are notified and given an opportunity to be heard. Second, the court holds a fairness hearing to determine whether the proposed settlement is "fair, reasonable, and adequate." *Id.*; Fed. R. Civ. P. 23(e)(2).

At the preliminary approval stage, the court's task is to "determine whether the proposed settlement is within the range of possible approval." *Armstrong*, 616 F.2d at 314 (internal quotation omitted). The court's role is not "resolving the merits of the controversy or making a precise determination of the parties' respective legal rights." *E.E.O.C. v. Hiram Walker & Sons*,

768 F.2d 884, 889 (7th Cir. 1985) (collecting cases). At this stage, Plaintiffs need show only that final approval is likely, not that it is certain. *See* Fed. R. Civ. P. 23(e)(1)(B) ("The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.").

## B. THE COURT WILL LIKELY BE ABLE TO APPROVE THE SETTLEMENT AS FAIR, REASONABLE, AND ADEQUATE

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *see also Armstrong,* 616 F.2d at 313 ("Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources."); *Roberts v. Graphic Packaging Int'l, LLC*, No. 3:21-cv-00750-DWD, 2024 WL 3373780, at *3 (S.D. Ill. July 11, 2024) (noting the Seventh Circuit's recognition of the overriding public interest in favor of class settlements). Because the Settlement Agreement would bind the Settlement Class, the Court may approve the settlement only after finding that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, Federal Rule of Civil Procedure 23(e)(2) requires the Court to consider whether (1) the class representatives and class counsel have adequately represented the class, (2) the proposal was negotiated at arm's length, (3) the relief provided by the settlement is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule

23(e)(3); and (v) the proposal treats class members equitably relative to each other. Fed. R Civ. P. 23(e)(2).

"Courts also consider the following five factors: (1) the strength of the plaintiffs' case compared to the amount of the defendant's settlement offer; (2) the complexity, length, and expense of continued litigation; (3) the amount of opposition to the settlement; (4) the opinion of experienced counsel; and (5) the stage of the proceedings and the amount of discovery completed." *Burnett v. Conseco Life Ins. Co.*, No. 1:18-cv-00200-JPH-DML, 2020 WL 4207787, at *8 (S.D. Ind. July 22, 2020) (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)).

### 1. Plaintiffs and Proposed Class Counsel are Adequate

As discussed above in Part II and detailed below in Part V.A.4, Plaintiffs and Class Counsel have worked diligently for the benefit of the Settlement Class in the Action and also in opposing efforts to settle the case in Colorado for no monetary relief. There is nothing to suggest a conflict of interest between Plaintiffs or Class Counsel and the members of the Settlement Class. On the contrary, Plaintiffs' interests are perfectly aligned with those of the Settlement Class. Accordingly, the adequacy of representation factor weighs in favor of preliminary approval.

### 2. The Settlement Agreement was Negotiated at Arm's Length

The proposed Settlement Agreement is the result of extensive arm's-length negotiations between the Parties. (Rivas Decl., ¶ 17.) To facilitate and oversee the settlement discussions in the case, early on the Parties engaged the assistance of Hunter Hughes, Esq., an experienced private mediator, and later Magistrate Judge Fuentes. (*Id.*, ¶ 15.) In preparation for the private mediation before Mr. Hughes, the Parties prepared detailed mediation briefs. (*Id.*) The private mediation did not end in resolution, so the Parties continued with the litigation. (*Id.*)

But later, after almost a year of discovery and the Court's ruling on the motion to dismiss, the Parties participated in two settlement conferences with Judge Fuentes: an initial all-day, in-person session held on February 5, 2025, which did not immediately resolve the case, and a subsequent session on May 22, 2025. (Rivas Decl., ¶¶ 16-17.) The Parties ultimately reached agreement on the material terms of the Settlement on May 22, 2025. (*Id*. ¶ 17) The Parties subsequently memorialized the Settlement's terms in the Settlement Agreement. (*Id*.) The Parties did not discuss the issue of attorneys' fees or the amount of the service awards until after they reached agreement on the material terms benefitting the Settlement Class. (*Id*.)

"The best evidence of a 'truly adversarial bargaining process' is the 'presence of a neutral third-party mediator.'" *T.K. Through Leshore v. Bytedance Tech. Co*., No. 19-cv-7195, 2022 WL 888943, at *11 (N.D. Ill. Mar. 25, 2022) (citation omitted); *see also* 2 McLaughlin on Class Actions, § 6:7 (21st ed. 2024) ("A settlement reached after a supervised mediation weighs in favor of a finding of non-collusiveness …."); *Steele v. GE Money Bank*, No. 1:08-civ-1880, 2011 WL 13266350, at *4 (N.D. Ill. May 17, 2011) ("[t]he involvement of an experienced mediator is a further protection for the class, preventing potential collusion"), report and recommendation adopted, No. 1:08-civ-1880, 2011 WL 13266498 (N.D. Ill. June 1, 2011); *Wright v. Nationstar Mortage LLC,* No. 14 C 10457, 2016 WL 4505169, at *11 (N.D. Ill. Aug. 29, 2016) (similar).[8]

---

[8] *See also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] mediator[ ] helps to ensure that the proceedings were free of collusion and undue pressure."); *Sandoval v. Tharaldson Emp. Mgmt., Inc*., No. EDCV 08-482-VAP (OPx), 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is noncollusive."); *Milliron v. T-Mobile USA, Inc*., No. 08-4149, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) ("[T]he participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.").

Because the Parties' negotiations were always at arms-length and before experienced neutrals, including Magistrate Judge Fuentes, this factor weighs in favor of preliminary approval.

### 3. The Settlement Treats Class Members Equitably Relative to Each Other

The proposed Settlement treats Settlement Class Members equitably relative to each other. The Settlement is specifically designed to apportion relief among Settlement Class Members in proportion to the harms they have suffered. Each Settlement Class Member is entitled to: (1) an initial payment of $50.00 for being placed on the platform, and (2) an additional pro-rata payment directly proportional to the length of time they were listed on Grubhub. (POA, ¶ 4 (a).)

If a small amount of funds remains in the Net Settlement Fund after the completion of the claims process (e.g., stale checks that were not cashed) the remainder will be paid to the *Cy Pres* recipient(s) agreed upon by the Parties and approved by the Court—only if an additional distribution is not administratively feasible. (POA, ¶ 5.)

### 4. The Relief Provided by the Settlement Agreement is Adequate

To grant preliminary approval, the Court must determine that it is "likely" to approve the settlement. In other words, this Court should determine whether the proposed Settlement falls within the range of possible final approval. *See* Manual for Complex Litigation, Fourth, § 21.632 at pp. 320-21. The range of approval "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1325 (5th Cir. 1981) ("[T]he essence of a settlement is compromise. A just result is often no more than an arbitrary point between competing notions of reasonableness.").

The $7,154,586 non-reversionary cash fund established under the Settlement represents a meaningful recovery for the Settlement Class. The Settlement Fund of $7,154,586 represents roughly 14-24% of Plaintiffs' estimated range of recovery. (Rivas Decl., ¶ 19.) This percentage is more than the benchmark that courts routinely find reasonable in class action settlements. *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 583 (N.D. Ill. 2011) (gathering cases showing that 10% is reasonable); *In re Newbridge Networks Sec. Litig.*, No. CIV. A. 94-1678-LFO, 1998 WL 765724, at *2 (D.D.C. Oct. 22, 1998) (noting that while "[c]ourts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; [ ] an agreement that secures roughly six to twelve percent of a *potential* trial recovery … seems to be within the targeted range of reasonableness") (italics in original); *see also McPhail v. First Command Fin. Planning, Inc.,* No. 05cv179-IEG-JMA, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (recovery of 7% of estimated damages fair and adequate). The recovery is particularly notable given that the decision to award disgorgement of profits is discretionary, not mandatory, and Grubhub has asserted throughout the case that the Place & Play program was not profitable.

Rule 23(e)(2)(c) provides four considerations that must be taken into account when determining whether the monetary relief under the Settlement is adequate: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). Each of these factors supports approval.

### a.      The costs, risks, and delay of trial and appeal

Although Plaintiffs and Class Counsel believe that the claims asserted in the Action are meritorious and that Plaintiffs and the Settlement Class would ultimately prevail at trial, continued

litigation against Defendant poses risks that make any eventual recovery for the Settlement Class uncertain. The fairness and adequacy of the Settlement is underscored by consideration of the obstacles that the Settlement Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the litigation. If the litigation were to continue, Plaintiffs face a number of significant risks before trial that could limit or even eliminate their claims, including a possible adverse ruling on Grubhub's motion to strike Plaintiffs' class allegations or a denial of Plaintiffs' upcoming motion for class certification; exclusion of Plaintiffs' damages or consumer survey experts; an unfavorable ruling on summary judgment; or a ruling or finding that disgorgement of profits is not appropriate. Additionally, while Plaintiffs believe their Lanham Act claims are certifiable, Grubhub would vehemently oppose Plaintiffs' motion for class certification and in fact, already moved to strike the class allegations. Despite these real and significant risks, the Settlement Class will recover a significant amount without having to go through trial and appeals.

When considering the Settlement, Plaintiffs weighed the certainty of an immediate recovery for the Settlement Class against the legal challenges that lie ahead. Under these circumstances, the proposed Settlement is fair, reasonable, and adequate.

> **b.** ***The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims***

The Parties, in collaboration with the Settlement Administrator, have developed a comprehensive notice plan designed to maximize outreach to Settlement Class Members as discussed in Part III.E above. The claims process is intentionally designed to be straightforward while effectively preventing fraudulent submissions. Settlement Class Members are also afforded the opportunity to appeal claim denials. (POA, ¶ 6.) Additionally, should any Settlement Class

Member have questions about the claims process, assistance is available via a dedicated toll-free number. Numerous courts have approved simplified claims processes such as the one here.

### c. The terms of any proposed award of attorney's fees, including timing of payment

Class Counsel will seek an award of fees up to 33.3% of the Settlement Fund (or $2,382,477). (Rivas Decl., ¶ 20.) This amount falls squarely in line with other approved class settlements in the Seventh Circuit. *E.g., Kolinek v. Walgreen Co*., 311 F.R.D. 483, 503 (N.D. Ill. 2015) (awarding 36% of net settlement fund in class settlement); *Martin v. JTH Tax, Inc*., No. 1:13-cv-6923 (N.D. Ill. Sept. 23, 2015), ECF No. 86 (awarding 38% of net settlement fund in class settlement); *Kusinski v. Macneil Auto. Prod. Ltd*., No. 17-cv-3618, 2018 WL 3814303, at *1 (N.D. Ill. Aug. 9, 2018) ("The Court authorizes 1/3 of the Gross Settlement Fund"); *In re Herff Jones Data Breach Litig*., No. 1:21-cv-01329-TWP-DLP (S.D. Ind. July 19, 2022), ECF No. 73 (awarding 35% of settlement fund for attorneys' fees as reasonable). Additionally, the $2,382,477 is substantially less than the lodestar that Class Counsel have incurred in the case. (Rivas Decl., ¶ 20.) Plaintiffs will also seek reimbursement of the reasonable litigation expenses incurred in prosecuting the Action, which are anticipated not to exceed $150,000.00. (*Id*.)

Plaintiffs will also file with the Court an application for approval of service awards for each of the Plaintiffs who are serving as class representatives in this case. In recognition of their substantial contributions to the Action and Settlement in this matter, Plaintiffs will request service awards in an amount not to exceed $20,000 for each of the following plaintiffs: Lynn Scott, LLC; The Farmer's Wife, LLC; Thuan Luu; Old Crown, Inc.; 132 Degrees, LLC; MDR, LLC; Momobbq, Co., LLC; MF Tasty LLC; and Iowa City Coffee Company. Each of these plaintiffs spent over 200 hours furthering the litigation of the case. Plaintiffs will also request a service

award in an amount not to exceed $7,000 for plaintiff Jack Tate d/b/a The Tin Pig, LLC, who dedicated nearly 70 hours to this litigation and filed his action in late 2023.

The proposed Class Representatives actively participated throughout the case—including providing factual support for multiple complaints, responding to discovery, preparing for depositions, attending mediation, and conferring regularly with counsel. By associating their business name and reputation with this litigation, each plaintiff assumed significant financial risk and committed time that could otherwise have been devoted to managing their restaurant responsibilities. Their involvement even resulted in some plaintiffs being named in related insurance disputes between Grubhub and its insurers. (Rivas Decl., ¶ 10.) Plaintiffs' efforts were crucial in achieving a meaningful recovery for the Class. (*Id.*, ¶ 11.)

Courts in this Circuit routinely approve service awards in the $10,000 to $25,000 range, particularly where representatives dedicate significant time, assume litigation risks, and reject individual settlement offers in favor of class-wide relief. *See, e.g., Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) 1016 (affirming $25,000 incentive award to lead class representative); *BNVS Transp. LLC v. Trucking, LLC*, No. 1:20-cv-04305, 2023 WL 11983614, at *3 (N.D. Ill. Feb. 22, 2023) (granting three named plaintiffs $20,000 each); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-cv-4462, 2015 WL 1399367, at *6 (N.D. Ill. Mar. 23, 2015) (approving $25,000 service award to a business class representative). The requested awards are consistent with precedent and reflect the time, effort, and risk the Plaintiffs undertook to secure relief for the Settlement Class. The service awards will also be paid from the Settlement Fund.

Under the Parties' proposed schedule, Class Counsel's application for attorneys' fees, expense reimbursement, and service awards for the Class Representatives will be filed and posted on the Settlement Website at least 28 days before the objection deadline. And any fees and

expenses, and service awards awarded by the Court will be paid ten days after the Effective Date. (S.A., § X, ¶¶ 2, 5.) These provisions in the Settlement Agreement support preliminary approval because they do not create a preference that favors Class Counsel or the named Plaintiffs in terms of timing of the payments.

### d.   Any agreement required to be identified under Rule 23(e)(3)

Rule 23(e)(3) requires parties seeking approval to "file a statement identifying any agreement made in connection with the proposal." This section requires disclosure of any side agreements that may not be clearly set forth in the settlement agreement.  Here, the Settlement Agreement contemplates that if the total number of opt-outs from the Settlement meets or exceeds a certain confidential number, Grubhub will have the right to terminate the Settlement. (S.A., § XIV, ¶ 3.) The confidential threshold number is contained within a separate Confidential Supplemental Agreement Regarding Exclusion Threshold. Should the Court wish to see the Confidential Supplement Agreement Regarding Exclusion Threshold, the Parties request that the Court permit them to file it under seal.

### 5.   The Strength of Plaintiffs' Case Compared Against the Amount of Settlement

Perhaps the most important settlement-approval factor is "'the strength of plaintiff's case on the merits balanced against the amount offered in the settlement.'" *Synfuel Techs.*, 463 F.3d at 653 (quoting *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1132 (7th Cir. 1979)). Here, continued litigation with the Defendant poses notable risks and costs. Chief among these is the potential that Plaintiffs may not prevail on their claims or successfully establish damages, and Defendant will argue that demonstrating loss of sales class-wide cannot be done. And although the Lanham Act permits disgorgement of profits, such recovery would require the trier of fact to find that Grubhub's profits should be disgorged regardless of harm to the Settlement

Class—a point Grubhub vigorously disputes. While Plaintiffs believe their claims are certifiable, they recognize that Grubhub will vigorously oppose class certification.

Even if Plaintiffs overcame these hurdles, they would still face the significant expense and delay of continued litigation, including Daubert motions, dispositive motions, trial, and potential appeals. Furthermore, "[e]ven if Plaintiffs were to succeed on the merits at some future date, a future victory is not as valuable as a present victory. Continued litigation carries with it a decrease in the time value of money, for '[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now.'" *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (quoting *Reynolds*, 288 F.3d at 284); *See also Schulte v. Fifth Third Bank*, 805 F.Supp.2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation."). In negotiating and evaluating the Settlement, Plaintiffs and Class Counsel have taken these costs and uncertainties into account, as well as the risks and delays inherent in complex class action litigation. Moreover, the consideration to be paid by Defendant is significant. Accordingly, the strength of Plaintiffs' case compared to settlement amount weighs in favor of the fairness, reasonableness, and adequacy of the proposed Settlement.

### 6. Likely Complexity, Length, and Expense of Continued Litigation

The anticipated complexity, duration, and cost of a trial are also relevant to assessing the fairness, reasonableness, and adequacy of the proposed Settlement Agreement. Further litigation will necessitate additional expenditures and substantial time commitments beyond what has already been invested. The ten named plaintiffs have not yet been deposed, and Plaintiffs plan to conduct further depositions of Grubhub employees, including Grubhub's corporate representative, if the Settlement is not approved. Continued prosecution of the case will no doubt

require considerable expert involvement, with at least two of Plaintiffs' experts expected to opine on the impact of Grubhub's representations on consumer sentiment and damages. Efforts to certify a nationwide class and prevail on the merits are likely to be lengthy, complex, and expensive, involving multiple expert witnesses, extended discovery, and extensive motions practice. This factor is therefore considered in evaluating whether to grant preliminary approval.

### 7. Opposition to the Settlement Agreement

Next, while no opposition to the Settlement is currently known, this factor is better examined after notice has been issued to the Settlement Class. Thus, this factor does not weigh either for or against preliminary approval of the Settlement.

### 8. The Opinion of Experienced Counsel

The opinion of counsel weighs heavily in favor of the fairness, reasonableness, and adequacy of the proposed Settlement. Courts are "entitled to 'rely heavily on the opinion of competent counsel,'" *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (quoting *Armstrong*, 616 F.2d at 325). As explained more fully below in the discussion on adequacy of representation, Class Counsel are experienced and highly competent class action litigators and believe the Settlement should be preliminarily approved. (Rivas Decl., ¶ 4.) Accordingly, this factor weighs in favor of granting preliminary approval.

### 9. The Stage of the Proceedings and the Amount of Discovery Completed

"The stage of the proceedings at which settlement is reached is important because it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Armstrong*, 616 F.2d at 325. The proposed Settlement was reached after nearly five years of litigation and months of extensive mediation efforts. Extensive written discovery has been completed, including hundreds of written discovery requests served by the Parties. Over 90,000

pages of documents have been produced by Grubhub in this case to date. (*Id.*, ¶ 13.) All of the discovery has informed the Parties' settlement negotiations and included internal communications, records of consumer complaints, analyses, presentations, operational and financial data, and other relevant evidence, as well as a deposition a Grubhub employee. (*Id.*) "While there is more discovery that could be done, [ ] there is no indication that additional discovery would further assist the parties in reaching a settlement agreement that is fair to the Class." *Burnett*, 2020 WL 4207787, at *10. "Accordingly, this factor weighs in favor of the fairness, reasonableness, and adequacy of the Proposed Settlement Agreement." (*Id.*)

## V.     CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE

Once the Court determines that the proposed Settlement merits approval, the Court then must determine whether the class is likely to meet the requirements for certification for settlement purposes. Fed. R. Civ. P. 23(e)(1)(B)(ii). "Rule 23 gives the district courts broad discretion to determine whether certification of a class-action lawsuit is appropriate[.]" *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008) (internal quotations omitted). A plaintiff seeking class certification must satisfy each requirement of Rule 23(a)—numerosity, commonality, typicality and adequacy of representation—and one subsection of Rule 23(b). *Simpson v. Dart,* 23 F.4th 706, 711 (7th Cir. 2022)*; Santiago v. City of Chicago,* 19 F.4th 1010, 1016 (7th Cir. 2021)*.*[9]

"'Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is

---

[9] In addition, courts have identified two implied prerequisites of Rule 23: (1) that the class definition be sufficiently precise to enable a court to ascertain the identity of class members by reference to objective criteria; and (2) that the named representative be a member of the proposed class. *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977). Because the proposed Settlement Class is defined using objective criteria and because there is no question that Plaintiffs are members of the proposed Settlement Class, both implied requirements are easily satisfied.

that there be no trial.'" *Smith v. Sprint Communications Co*., L.P., 387 F.3d 612, 614 (7th Cir. 2004); (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).

## A. RULE 23(A)'S REQUIREMENTS ARE SATISFIED

### 1. <u>Numerosity</u>

Rule 23(a) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement." *Mulvania v. Sheriff of Rock Island Cty*., 850 F.3d 849, 859 (7th Cir. 2017). *See also Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333, n.9 (7th Cir. 1969) (similar); *Savanna Group, Inc. v. Trynex, Inc*., No. 10-cv-7995, 2013 WL 66181, *4 (N.D. Ill. Jan. 4, 2013) (similar).

Here, the proposed Settlement Class includes approximately 387,000 businesses as determined by Grubhub's business records. (Rivas Decl. ¶ 8.) The Settlement Class thus easily satisfies the numerosity requirement. *See, e.g., Karpilovsky v. All Web Leads, Inc*., No. 17 C 1307, 2018 WL 3108884, at *6 (N.D. Ill. June 25, 2018) (class of 40 or more is sufficient); *McCabe v. Crawford & Co*., 210 F.R.D. 631, 643 (N.D. Ill. 2002).

### 2. <u>Commonality</u>

To satisfy the commonality requirement, there must "be one or more common questions of law or fact that are capable of class-wide resolution and are central to the claims' validity." *Beaton v. SpeedyPC Software,* 907 F.3d 1018, 1026 (7th Cir. 2018) (citing *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015)). Commonality is satisfied where common questions are capable of generating "common *answers* apt to drive the resolutions of the litigation." *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011) (italics in original). The common questions "need not address every aspect of the plaintiffs' claims," but they "must drive

the resolution of the litigation." *Phillips v. Sheriff of Cook Cty.*, 828 F.3d 541, 553 (7th Cir. 2016) (internal quotations omitted). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Dukes*, 131 S. Ct. at 2556. (internal quotations and alterations omitted).

Here, there are many questions of law and fact that are common to the proposed Settlement Class. These include whether Defendant's inclusion of unaffiliated restaurants on its platform was likely to cause consumer confusion as to the restaurant's affiliation with Grubhub; whether and how much Grubhub profited from including unaffiliated restaurants on its website and mobile apps without a contract in place; whether Grubhub engaged in false advertising by including unaffiliated restaurants on its website and mobile apps without a contract in place; whether Grubhub engaged in false advertising by stating that deliveries from non-partnered restaurants are available on Grubhub; whether Grubhub's actions violated the Lanham Act; and the nature of the relief, including damages and equitable relief, to which Plaintiffs and the Settlement Class Members are entitled. Because Plaintiffs' claims involve common questions of law and fact, Plaintiffs have satisfied the commonality requirement. *See, e.g., Parker v. Risk Mgmt. Alternatives, Inc.*, 206 F.R.D. 211, 213 (N.D. Ill. 2002) ("[A] common nucleus of operative fact is usually enough to satisfy the [commonality] requirement."); *Burnett v. Conseco Life Ins. Co.*, No. 1:18-cv-00200-JPH-DML, 2020 WL 4207787, at *5-6 (S.D. Ind. July 22, 2020).

### 3.    <u>Typicality</u>

To satisfy the typicality requirement, "'the claims or defenses of the representative party [must] be typical of the claims or defenses of the class.'" *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (quoting *Williams v. Chartwell Fin. Servs., Ltd*., 204 F.3d 748, 760 (7th Cir. 2000)). "A claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members and ... [the] claims are based on the same legal

theory.'" *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). "Although '[t]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members,' the requirement 'primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large.'" *Muro*, 580 F.3d at 492 (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)) (alteration in original). Put another way, where the defendant engages "in a standardized course of conduct vis-a-vis the class members, and plaintiffs' alleged injury arises out of that conduct," typicality is "generally met." *Hinman v. M and M Rental Ctr. Inc.*, 545 F. Supp. 2d 802, 806-07 (N.D. Ill. 2008) (citing, e.g., *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir.1998)). Here, the claims of Plaintiffs and all Settlement Class Members arise out of the same course of conduct—Grubhub's listing of their restaurant names, logos, and other information on its online food ordering and delivery platform without contracts in place—and assert the same theories of liability under the Lanham Act. Accordingly, typicality is satisfied. *See, e.g.*, *Burnett*, 2020 WL 4207787, at *6.

### 4. Adequacy of Representation

To satisfy the adequacy of representation requirement, the representative parties must "fairly and adequately protect the interests of the class." *Amchem Prods.*, 521 U.S. at 625. "This adequate representation inquiry consists of two parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011) (citing *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584,

598 (7th Cir. 1993)). "A class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Rosario*, 963 F.2d at 1018.

Plaintiffs and proposed Class Counsel here adequately represent the class. There is no conflict between Plaintiffs and Settlement Class Members, as both groups were allegedly harmed by Grubhub listing their restaurants on its platforms without contracts, causing diners to wrongly believe those restaurants endorsed Grubhub's delivery services. In light of this common injury, the named Plaintiffs have every incentive to vigorously pursue the class claims. Plaintiffs have actively participated in this litigation by providing documents, reviewing pleadings, preparing for scheduled depositions (reset on two separate occasions), attending mediation, while remaining in regular contact with counsel and keeping appraised of the status of this litigation including settlement negotiations throughout the entire case. (Rivas Decl., ¶ 10.)  Further, Class Counsel have also invested substantial time and resources in this case by investigating the underlying facts, researching the applicable law, retaining and conferring with experts, engaging in extensive discovery, vigorously opposing settlement efforts that did not adequately compensate and protect the interests of the class, and negotiating a detailed settlement. (*Id.*, ¶ 6.) Moreover, Class Counsel have decades of combined experience vigorously litigating class actions on behalf of plaintiffs aggrieved by corporate malfeasance, including numerous false advertising cases, and do not have interests that conflict with the Settlement Class. (*Id.*, ¶ 4.) Thus, the requirements of Rule 23(a) are satisfied.

## B.    RULE 23(B)(3) REQUIREMENTS ARE SATISFIED

Certification of a class under Rule 23(b)(3) is proper if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and [when] a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This rule requires two findings: predominance of common questions over individual ones and superiority of the class action mechanism. *Id*. In assessing whether those requirements have been met, courts should consider: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id*.

The predominance requirement under Rule 23(b)(3) focuses on the relationship between the common and individual issues in the case, and tests whether the proposed class is sufficiently cohesive to warranty class certification. "There is no mathematical or mechanical test for evaluating predominance." *Howard v. Cook Cty. Sheriff's Office*, 989 F.3d 587, 607 (7th Cir. 2021) (internal quotes omitted). However, "[e]fficiency is the animating principle." *Id*. "To gauge whether a class action would be more efficient than individual suits, [t]he predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id*. (internal quotation omitted; alteration in original). "When a proposed class challenges a uniform policy, the validity of that policy tends to be the predominant issue in the litigation." *Nicholson v. UTI Worldwide, Inc.*, No. 3:09-cv-722-JPG-DGW, 2011 WL 1775726, at *7 (S.D. Ill. May 10, 2011) (citation omitted). Notably, when a settlement class is proposed, the manageability criteria of Rule 23(b)(3) do not apply. *Amchem*, 521 U.S. at 620.

Here, for settlement purposes, the central common questions predominate over any questions that may affect individual Settlement Class Members. As previously discussed, the

central common questions include whether Defendant's inclusion of unaffiliated restaurants on its platform was likely to cause consumer confusion as to the restaurant's affiliation with Grubhub; whether and how much Grubhub profited from including unaffiliated restaurants on its website and mobile apps without permission; and whether Grubhub engaged in false advertising by including unaffiliated restaurants on its website and mobile apps without contracts in place and by stating that deliveries from non-partnered restaurants are available on Grubhub. These issues, as Plaintiffs allege, are subject to generalized proof and outweigh any issues that are subject to individualized proof. Thus, the Settlement Class meets the predominance requirement for settlement purposes.

Furthermore, here, a class action is vastly "superior to other available methods for fairly and efficiently adjudicating the controversy" for numerous reasons. Fed. R. Civ. P. 23(b)(3). First, the members of the Settlement Class are both significant in number and geographically dispersed and the interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions.

Additionally, a class action is superior here because it will conserve judicial resources and is more efficient for Settlement Class Members, particularly those who lack the resources to bring their claims individually. It will be the most efficient way to resolve Settlement Class Members' claims, especially considering that they would have a difficult and costly task in seeking relatively small damages solely on an individual basis. Employing the class device here will not only achieve economies of scale for the Settlement Class but will also conserve judicial resources and preserve public confidence in the integrity of the system by avoiding the waste and delay of repetitive proceedings and preventing inconsistent adjudications. Accordingly, a class action is

superior to individual suits. Because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, the Court should preliminarily certify the Settlement Class.

### C. ROSEMARY M. RIVAS AND ELIZABETH FEGAN SHOULD BE APPOINTED AS CLASS COUNSEL

When certifying a Rule 23 class, the Court is required to appoint class counsel to represent the class members. *See* Fed. R. Civ. P. 23(g)(1). In appointing class counsel, the Court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed R. Civ. P. 23(g)(1)(A).

Plaintiffs are represented by Rosemary M. Rivas of the Gibbs Mura LLP and Elizabeth A. Fegan of Fegan Scott LLC. Each has extensive experience litigating class actions. (Rivas Decl., ¶ 4.) These attorneys have done substantial work identifying the Lanham Act claims in this case, investigating the facts, vigorously prosecuting the case through intense discovery, protecting the class from inadequate settlements, and negotiating and settling Plaintiffs' claims. (*Id.*, ¶ 6.) They have thoroughly investigated the facts and circumstances surrounding Grubhub's Place & Pay program and the impact Grubhub's listing of non-contracted restaurants on its platforms had on the Settlement Class Members' reputations. They have researched numerous legal claims against Defendant, including in-depth analysis of the Lanham Act, and Grubhub's potential defenses. Counsel have analyzed industry and Grubhub data, information, and public reports, collaborated with and retained experts to develop innovative damages models, and over saw the review and analysis of 90,000 pages of documents produced by Defendant. (*Id.*, ¶ 7.) Further, they are willing to commit and have already committed the necessary resources to represent the Settlement

Class. (*Id.*, ¶ 8.) Accordingly, the Court should preliminarily appoint Rosemary M. Rivas and Elizabeth A. Fegan as Class Counsel.

### D. THE PROPOSED NOTICE PLAN SHOULD BE APPROVED

Under Fed. R. Civ. P. 23(c)(2)(B), a notice must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). Further, when presented with a proposed class settlement, a court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). "The contents of a Rule 23(e) notice are sufficient if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the hearing." 3 Newberg on Class Actions § 8:32 (4th ed. 2010).

The proposed notice plan satisfies the requirements of Rule 23 and due process by providing the best notice practicable under the circumstances. Developed with the assistance of an experienced Settlement Administrator, the notice plan relies on the most current contact information available to the Defendant and includes reasonable efforts to update that information where necessary. A summary of the Settlement's material terms will be disseminated via U.S. mail and email to all identifiable Settlement Class Members, supplemented by a targeted digital

advertising campaign designed to maximize reach. In addition, the Settlement Administrator will establish and maintain a dedicated Settlement Website containing the Long-Form Notice, Claim Form, Settlement Agreement, and other relevant documents, and will operate a toll-free hotline to respond to inquiries. This multi-pronged approach ensures that the Settlement Class is adequately informed of their rights and options under the Settlement, including how to submit Claim Forms, opt out, or object to the Settlement.

Moreover, the proposed notice plan is appropriate and adequate because it describes the terms of the settlement, informs the Settlement Class about the requests for attorney's fees and expenses and service awards, and explains how members of the Settlement Class may opt-out or object to the Settlement, and provides specific information regarding the date, time, and place of the fairness hearing. *See Air Lines Stewards & Stewardesses Ass'n, Local 550 v. Am. Airlines, Inc.*, 455 F.2d 101, 108 (7th Cir. 1972) (notice that provided summary of proceedings to date, notified of significance of judicial approval of settlement and informed of opportunity to object at hearing satisfied due process). The proposed notice plan provided for here more than satisfies this standard.

**E.     EPIQ SHOULD BE APPOINTED AS SETTLEMENT ADMINISTRATOR**

Plaintiffs request that the Court appoint Epiq Class Action & Claims Solutions, Inc. ("Epiq") to serve as the Settlement Administrator. Epiq specializes in claims administration and has substantial experience administering nationwide consumer settlements such as this. (Azari Decl., ¶ 4.) Epiq was selected following a competitive request for proposal process involving six different settlement administration providers. As demonstrated by the accompanying Azari Declaration, Epiq is qualified to serve as the Settlement Administrator.

## VI.     PROPOSED SCHEDULE TO IMPLEMENT SETTLEMENT

Plaintiffs propose the following schedule for the remainder of the approval process:

| EVENT | DATE |
|---|---|
| Deadline to begin sending Class Notice via U.S. mail and email | November 3, 2025 |
| Deadline for Class Counsel to file Motion for Final Approval and Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards | December 19, 2025 |
| Deadline for members of the Settlement Class to submit objections | February 2, 2026 |
| Deadline for members of the Settlement Class to submit requests for exclusion | February 2, 2026 |
| Deadline for Settlement Class Members to submit Claim Forms | March 4, 2026 |
| Deadline for Class Counsel to file Replies in support of Motion for Final Approval and Motion for Attorneys' Fees, Reimbursement of Expenses and Service Awards; (b) proof of compliance with notice plan and list of exclusions; and (c) any responses to the objections. | March 25, 2026 |
| Deadline for giving written notice of intent to be heard at the Final Approval Hearing | March 31, 2026 |
| Final Approval Hearing | April 15, 2026 at 10:00 a.m. |

## VII.    **CONCLUSION**

For the reasons described above, Plaintiffs respectfully request that the Court enter the accompanying Preliminary Approval Order, which (1) appoints Plaintiffs as the named Class representatives to represent the Settlement Class; (2) appoints Rosemary M. Rivas and Elizabeth A. Fegan as Class Counsel; (3) schedules a fairness hearing on the question of whether the proposed Settlement should be approved as fair, reasonable, and adequate; (4) approves the form and content of the proposed Class Notice to the Settlement Class; (5) approves the form and content of the proposed Claim Form; (6) approves the proposed method of objecting to and requesting exclusion from the Settlement; (7) directs Class Notice to be carried out as described in the Settlement Agreement and in accordance with the notice plan; (8) preliminarily approves the Settlement; (9) appoints Epiq as the Settlement Administrator; and (10) preliminarily certifies the Settlement Class for purposes of settlement only.

Dated: August 26, 2025                                   Respectfully submitted,

                                                        /s/ *Elizabeth A. Fegan*

                                                        Elizabeth A. Fegan
                                                        **FEGAN SCOTT LLC**
                                                        150 S. Wacker Dr.
                                                        24th Floor
                                                        Chicago, IL 60606
                                                        Telephone: (312) 741-1019
                                                        Facsimile: (312) 264-0100
                                                        beth@feganscott.com

                                                        Jonathan D. Lindenfeld (pro hac vice)
                                                        **FEGAN SCOTT LLC**
                                                        305 Broadway, 7th Floor
                                                        New York, NY 10007
                                                        Telephone: (332) 216-2101
                                                        Facsimile: (917) 725-9346
                                                        jonathan@feganscott.com

                                                        Rosemary M. Rivas (pro hac vice)

Brian Johnson (pro hac vice)
**GIBBS MURA LLP**
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
rmr@classlawgroup.com
bej@classlawgroup.com

*Counsel for Plaintiffs and the Proposed Class*