# UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| LYNN SCOTT, LLC, et al., on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>GRUBHUB INC.,<br><br>        Defendant. | Case No. 1:20-cv-06334<br>Honorable LaShonda A. Hunt |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR AWARD OF (1) ATTORNEYS' FEES, (2) REIMBURSEMENT OF EXPENSES, AND (3) CLASS REPRESENTATIVE SERVICE AWARDS**

## TABLE OF CONTENTS

I. INTRODUCTION..................................................................................................1

II. LITIGATION HISTORY.....................................................................................3

    A. THE FILING OF THE ACTION ...............................................................3

    B. THE PARTIES ENGAGED IN EXTENSIVE MOTION PRACTICE ................4

    C. THE PARTIES ENGAGED IN EXTENSIVE DISCOVERY ..............................5

    D. THE PARTIES' ARM'S LENGTH SETTLEMENT NEGOTIATIONS AND RESULTING SETTLEMENT ....................................................................6

III. ARGUMENT ......................................................................................................7

    A. LEGAL STANDARD ...............................................................................8

    B. THE REQUESTED FEES ARE REASONABLE UNDER THE PERCENTAGE OF THE FUND METHOD ........................................................................8

        1. Class Counsel faced a substantial risk of nonpayment ......................9

        2. Class Counsel's performance has been of a high quality................10

        3. Class Counsel performed a significant amount of work ................10

        4. The complexity, length and expense of the litigation ....................11

        5. Stakes of the Case...........................................................................11

        6. Actual fee agreements, data from similar cases, and class-counsel auctions .........................................................................................12

    C. THE FEE REQUEST IS REASONABLE UNDER A LODESTAR CROSS-CHECK, SHOULD THE COURT CHOOSE TO PERFORM ONE..................13

    D. PLAINTIFFS' REQUEST FOR REIMBURSEMENT OF EXPENSES SHOULD BE GRANTED ....................................................................................14

    E. THE COURT SHOULD GRANT THE REQUESTED SERVICE AWARDS TO REFLECT CLASS REPRESENTATIVES' CONSIDERABLE TIME AND EFFORT .............................................................................................15

IV. CONCLUSION ................................................................................................17

i

# TABLE OF AUTHORITIES

**Cases**   Page(s)

*Americana Art China Co. v. Foxfire Printing & Packaging, Inc.,*
   743 F.3d 243 (7th Cir. 2014) .................................................................................................. 8

*Beezley v. Fenix Parts, Inc.,*
   2020 WL 4593823 (N.D. Ill. Aug. 7, 2020) ........................................................................ 14

*Behrens v. Landmark Credit Union,*
   2018 WL 3130629 (W.D. Wisc. June 26, 2018) .................................................................. 12

*Blum v. Stenson,*
   465 U.S. 886 (1984) ............................................................................................................... 13

*BNVS Transport LLC v. C&K Trucking, LLC,*
   2023 WL 11983614 (N.D. Ill. Feb. 22, 2023) ...................................................................... 17

*Chambers v. Together Credit Union,*
   2021 WL 1948452 (S.D. Ill. May 14, 2021) ................................................................... 8, 15

*Charvat v. Valente,*
   2019 WL 5576932 (N.D. Ill. Oct. 28, 2019) ....................................................................... 17

*Cook v. Niedert,*
   142 F.3d 1004 (7th Cir. 1998) .............................................................................................. 16

*Craftwood Lumber Co. v. Interline Brands, Inc.,*
   2015 WL 1399367 (N.D. Ill. Mar. 23, 2015) ...................................................................... 17

*Domann v. Summit Credit Union,*
   2020 WL 1847868 (W.D. Wisc. Apr. 13, 2020) .................................................................. 14

*Donovan v. Est. of Frank E. Fitzsimmons,*
   778 F.2d 298 (7th Cir. 1985) ................................................................................................ 10

*Gaskill v. Gordon,*
   160 F.3d 361 (7th Cir. 1998) ............................................................................................ 9, 12

*George v. Kraft Foods Global, Inc.,*
   2012 WL 13089487 (N.D. Ill. June 26, 2012) ..................................................................... 13

*Goldsmith v. Tech. Sols. Co.,*
   1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) ....................................................................... 8

*Hale v. State Farm Mut. Automobile Ins. Co.*,
   2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) ............................................................12

*In re Dairy Farmers of Am., Inc.*,
   80 F.Supp.3d 838 (N.D. Ill. 2015) ....................................................................... 8, 9

*In re Ky. Grilled Chicken Coupon Mktg. & Sales Pracs. Litig.*,
   2011 WL 13257072 (N.D. Ill. Nov. 30, 2011) .........................................................8

*In re Lawnmower Engine Horsepower Mktg. & Sales Pracs. Litig.*,
   733 F.Supp.2d 997 (E.D. Wis. 2010) .....................................................................14

*In re Navistar MaxxForce Engines Mktg., Sales Pracs. & Prods. Liab. Litig.*,
   2020 WL 2477955 (N.D. Ill. Jan. 21, 2020) ...........................................................17

*In re Stericycle Sec. Litig.*,
   35 F.4th 555 (7th Cir. 2022) ............................................................................ 9, 13

*In re Synthroid Mktg. Litig.*,
   325 F.3d 974 (7th Cir. 2003) .................................................................................13

*In re TikTok, Inc., Consumer Priv. Litig.*,
   617 F.Supp.3d 904 (N.D. Ill. 2022) ................................................................ 11, 14

*In re Trans Union Corp. Priv. Litig.*,
   2009 WL 4799954 (N.D. Ill. Dec. 9, 2009) ...........................................................13

*Kolinek v. Walgreen Co.*,
   311 F.R.D. 483 (N.D. Ill. 2015) ..............................................................................9

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970) ...............................................................................................14

*Schulte v. Fifth Third Bank*,
   805 F.Supp.2d 560 (N.D. Ill. 2011) .......................................................................14

*Scott v. Dart*,
   99 F.4th 1076 (7th Cir. 2024) ................................................................................15

*Silverman v. Motorola Sols., Inc.*,
   739 F.3d 956 (7th Cir. 2013) ...................................................................................9

*Summers v. UAL Corp. ESOP Comm.*,
   2005 WL 3159450 (N.D. Ill. Nov. 22, 2005) .........................................................13

*Taubenfeld v. AON Corp.*,
   415 F.3d 597 (7th Cir. 2005) ...................................................................................9

*United States ex rel. Perez v. Williams,*
  2013 WL 1181487 (N.D. Ill. Mar. 19, 2013) ...........................................................................13

Rules

Fed. R. Civ. P. 23(e)(2)(D) ................................................................................................15

Fed. R. Civ. P. 23(h) ................................................................................................ 1, 8, 14

Pursuant to Federal Rule of Civil Procedure 23(h) and the Court's Order Granting Preliminary Approval of Class Action Settlement, ECF No. 271, Plaintiffs and Class Representatives Lynn Scott, LLC; The Farmer's Wife, LLC; Thuan Luu; Old Crown, Inc.; 132 Degrees, LLC; MDR, LLC; Momobbq, Co., LLC; MF Tasty LLC; Iowa City Coffee Company; and Jack Tate d/b/a The Tin Pig, LLC ("Plaintiffs"), respectfully submit this memorandum in support of their motion for an award of attorneys' fees of one-third of the $7,154,586 common fund (or $2,382,477), reimbursement of expenses of $143,341.59; and service awards for the Plaintiffs for their participation in this litigation on behalf of themselves and the Settlement Class.

## I.   **INTRODUCTION**

After five years of hard-fought litigation, Plaintiffs and Class Counsel successfully negotiated the Class Action Settlement Agreement ("Settlement Agreement")[1] providing for a non-reversionary common fund of $7,154,586 million in cash for payment to restaurants that were listed on Grubhub's online food delivery platform without a contract in place pursuant to a program Grubhub implemented called "Place & Pay." For their work in this matter without any guarantee of recovery, Class Counsel seek an award of one-third of the common fund—the benchmark in the Seventh Circuit—or $2,382,477 in attorneys' fees. They also seek reimbursement of their expenses expended on experts and other litigation costs totaling $143,341.59.

Class Counsel filed this case in October 2020 after a thorough investigation and analysis of the potential claims and defenses thereto.[2] Class Counsel spent the better part of the first three years of the litigation opposing Grubhub's various efforts to stay the case and seeking to lift the

---

[1] Unless otherwise stated, all capitalized terms herein have the same meaning as defined in the Settlement Agreement. (ECF No. 267-2.)

[2] A full description of the work performed, and procedural history is set forth in the accompanying Declaration of Rosemary M. Rivas ("Rivas Decl.").

1

stay orders entered on account of a proposed class settlement Grubhub reached with another group of plaintiffs who copied the claims alleged here in the action titled *CO Craft, et al. v. Grubhub*, Case No. 1:20-CV-013270-NYW-NRN, pending in the District of Colorado *("CO Craft")*. Class Counsel successfully opposed and ultimately defeated the proposed settlement in *CO Craft* which provided that Grubhub would pay $450,000 in attorneys' fees in exchange for a broad release that encompassed the claims in this case, but ***no*** monetary relief to absent class members.

After the district court in *CO Craft* denied preliminary approval of two proposed class action settlements (due to Plaintiffs' objections), the plaintiffs in *CO Craft* negotiated individual settlements for themselves and dismissed their case, paving the way for Plaintiffs to prosecute the claims here on behalf of themselves and the Settlement Class. Once the stay was lifted in late-2023, the case went into overdrive. Grubhub moved to dismiss and moved to stay class discovery. Plaintiffs vigorously opposed both motions, which the Court largely denied.

In January 2024, the Parties proceeded to discovery, which was also hotly contested and involved several motions to compel before Magistrate Judge Gabriel A. Fuentes. Grubhub produced approximately 90,000 pages of documents and responded to hundreds of written discovery requests. Plaintiffs reviewed discovery regarding the revenue and profits Grubhub generated from adding non-contracted restaurants to its platform and how and why the Place & Pay program was implemented. Plaintiffs took a deposition of a Grubhub employee and were preparing to take Grubhub's 30(b)(6) deposition when the Settlement was reached.

The Settlement was the product of hard-fought settlement negotiations that took place over the course of about a year, first before a private mediator and then before Magistrate Judge Gabriel A. Fuentes. Additionally, the Settlement was also made possible by Plaintiffs' efforts. Plaintiffs actively participated in the litigation over the course of several years; they took significant time away from their busy restaurants to provide valuable documents and information to Class Counsel. They

2

spent hundreds of hours in this litigation participating in discovery, including producing hundreds of pages of documents, responding to numerous discovery requests and preparing to sit for depositions. They also participated in the settlement negotiations and spoke with Magistrate Judge Fuentes. From the outset of the case, they were committed to obtaining meaningful relief for the benefit of the Settlement Class, which they accomplished.

As discussed in more detail below, Class Counsel's fee request is reasonable and appropriate under applicable Seventh Circuit standards for common fund settlements and is well within the normal range of contingency-fee class action awards in this Circuit. The requested costs and expenses are reasonable, and the Class Representative service awards reasonably reflect the burdens, efforts, and risk undertaken by each Plaintiff throughout these years of litigation. Accordingly, Plaintiffs respectfully request that the Court grant this motion.

## II. <u>LITIGATION HISTORY</u>

### A. THE FILING OF THE ACTION

Plaintiffs filed this Action on October 26, 2020, following Grubhub's addition of thousands of restaurants to its online food ordering and delivery platform without having contracts with those restaurants. (ECF No. 1.) This initiative was known internally as the "Place & Pay" program because Grubhub placed and paid for orders at the non-contracted restaurants without disclosing the orders originated from Grubhub.

In both the initial and operative consolidated complaint, Plaintiffs alleged claims on behalf of a nationwide class against Grubhub under the Lanham Act for False Affiliation (§42(a)(1)(A)), False Advertising (§43(a)(1)(B)), and Trademark Infringement (§32). (ECF Nos. 1, 171.) Plaintiffs alleged that the inclusion of non-contracted restaurants caused consumer confusion regarding affiliation or endorsement and resulted in loss of sales and operational challenges that harmed their reputation. (ECF Nos. 1, 171.) Plaintiffs sought damages and equitable relief in the form of

3

disgorgement of profits and an injunction prohibiting Grubhub's behavior. (ECF Nos. 1 at ¶ 7, 171 at ¶ 12.) Grubhub answered the complaint, denying all liability and denying all of Plaintiffs' material allegations. (ECF No. 184.)

### B.     THE PARTIES ENGAGED IN EXTENSIVE MOTION PRACTICE

In January 2021, shortly after the Action was filed, Grubhub moved to stay the case pending the preliminary approval process in *CO Craft*. (ECF No. 16; Rivas Decl., ¶ 5.) Plaintiffs vigorously opposed the stay, but Judge Marvin E. Aspen granted it pending the outcome of *CO Craft*. (ECF No. 22; Rivas Decl., ¶ 5.)

Plaintiffs then intervened and objected to the proposed settlement in *CO Craft* because it provided no monetary relief to restaurants and was unreasonable, unfair, and inadequate. (Rivas Decl., ¶ 6.) Based on Plaintiffs' objections to the *CO Craft* settlement, the court there denied preliminary approval.[3] (Rivas Decl., ¶ 7.) Following the order denying preliminary approval in *CO Craft*, Plaintiffs moved to lift the stay entered by Judge Aspen. (*Id.*) After full briefing, Judge Aspen denied the motion to lift the stay due to Grubhub's representations that it was working on another proposed settlement in *CO Craft*. (ECF No. 57; Rivas Decl., ¶ 7.) The parties in *CO Craft* then presented a second proposed settlement for preliminary approval and Plaintiffs again objected to it. (Rivas Decl., ¶ 9.) The court there denied preliminary approval a second time based on Plaintiffs' objections.[4] Ultimately, the *CO Craft* plaintiffs settled and voluntarily dismissed their individual claims with prejudice, and dismissed the class claims without prejudice.[5] During the period the case was stayed, Class Counsel continued to investigate the claims and worked with an economist to help develop a damages model. (Rivas Decl., ¶ 8.)

---

[3] *CO Craft, LLC et al. v. Grubhub, Inc.*, No. 1:20-cv-01327-NYW-NRN (D. Colo.), ECF No. 63.
[4] *Id.*, ECF No. 91; Rivas Decl., ¶ 10.
[5] *Id.*, ECF No. 139; Rivas Decl., ¶ 10.

On July 24, 2023, the Parties formally agreed to lift the stay entered by Judge Aspen. (ECF No. 77; Rivas Decl., ¶ 11.) Shortly thereafter, however, Grubhub renewed its efforts to stay the case (ECF No. 88), which Plaintiffs again opposed. (ECF No. 90) (*See also* Rivas Decl., ¶ 14.) Grubhub ultimately withdrew its stay request (ECF No. 92; Rivas Decl., ¶ 14) and on November 9, 2023 moved to dismiss Plaintiffs' claims. (ECF No. 94; Rivas Decl., ¶ 15.) Additionally, one week later, Grubhub moved to stay class discovery pending resolution of its motion to dismiss. (ECF No. 98; Rivas Decl., ¶ 16.) Plaintiffs opposed both efforts, and on December 20, 2023, the Court denied Grubhub's discovery stay request, allowing class-wide discovery to proceed. (ECF No. 110; Rivas Decl., ¶ 18.) On August 6, 2024, the Court denied in part and granted in part Grubhub's motion to dismiss, with leave to amend. (ECF No. 152; Rivas Decl., ¶ 23.) Plaintiffs amended the complaint to address the Court's ruling, and the Court ordered Grubhub to respond to the amended complaint. (ECF No. 172; Rivas Decl., ¶ 23.)

Grubhub moved to strike Plaintiffs' class allegations on November 8, 2024. (ECF No. 191, Rivas Decl., ¶ 24.) Among other things, Grubhub argued that individual issues predominated over common issues making class certification inappropriate. (ECF No. 192; Rivas Decl., ¶ 24.) Plaintiffs filed a robust opposition, emphasizing their collaboration with experts to develop potential class-wide damage models, including the disgorgement of Grubhub's profits. (ECF No. 216; Rivas Decl., ¶ 24.) The Parties were awaiting the Court's ruling when they reached the Settlement. (Rivas Decl., ¶ 24.)

### C. THE PARTIES ENGAGED IN EXTENSIVE DISCOVERY

Plaintiffs served several rounds of written discovery, including six sets of requests for production, two sets of interrogatories, and requests for admission for a total of 141 written discovery requests. (Rivas Decl., ¶ 25.) Plaintiffs sought and obtained, among other things, data relating to consumer confusion and financial data relevant to their prayer for disgorgement of

profits. (*Id.*) The Parties met and conferred extensively regarding Plaintiffs' discovery requests and Grubhub's responses thereto. (*Id.*) The Parties resolved some issues on their own but on other issues, Plaintiffs filed four (4) motions to compel before Magistrate Judge Fuentes. (*Id.*; *see also* ECF Nos. 156, 165, 211, and 248.)

Plaintiffs reviewed more than 90,000 pages of documents produced by Grubhub such as internal communications involving several Grubhub employees about the Place & Pay program, marketing presentations, and financial presentations regarding the success of the Place & Pay program. (Rivas Decl., ¶ 26.) Plaintiffs also deposed Grubhub employee Mary Rappa, a marketing manager at Grubhub, and Plaintiffs were in the process of preparing for the deposition of Grubhub's 30(b)(6) witnesses when they reached the Settlement. (*Id.*)

For their part, Plaintiffs produced over 1,000 documents to Grubhub and were preparing to sit for deposition. (Rivas Decl., ¶ 26.) Each plaintiff also provided written responses to Defendant's First Set of Requests for Production, First Set of Interrogatories, and First Set of Requests for Admission for each plaintiff; and two plaintiffs were served with additional written discovery requests. (*Id.* at ¶ 45.) Collectively, Plaintiffs responded to 658 written discovery requests. (*Id.*)

### D. THE PARTIES' ARM'S LENGTH SETTLEMENT NEGOTIATIONS AND RESULTING SETTLEMENT

Recognizing the risks and expense of continued litigation, the Parties engaged in settlement discussions over the course of a year. (Rivas Decl., ¶ 28.) Their first attempt at settlement involved engaging in private mediation on May 22, 2024 before experienced mediator Hunter Hughes, Esq. (*Id.*) In preparation for the mediation, the Parties prepared detailed mediation briefs. The mediation did not result in a resolution and the Parties continued to vigorously pursue discovery in anticipation of Plaintiffs' class certification motion.

After the Court largely denied Grubhub's motion to dismiss and the Parties completed their briefing on Grubhub's motion to strike the class allegations, the Parties participated in a settlement

conference on February 5, 2025, before Magistrate Judge Fuentes. (Rivas Decl., ¶¶ 23–24, 29.) In advance of the settlement conference, the Parties exchanged detailed settlement statements regarding the strengths and weaknesses of the claims and defendants. (Rivas Decl., ¶ 29.) While no resolution was reached that day, negotiations continued. (*Id.*) The Parties participated in a second settlement conference before Magistrate Judge Fuentes on May 22, 2025. (*Id.* at ¶ 30.) At that session, the Parties reached a resolution on the material terms of settlement, including Grubhub's non-reversionary payment of $7,154,586 in cash. (*Id.*) The Parties subsequently exchanged several drafts of a class action settlement agreement which they finalized on August 26, 2025. (*Id.* at ¶ 31.)

After reaching the Settlement Agreement, Plaintiffs moved for preliminary approval of the class-wide Settlement. (ECF No. 267; Rivas Decl., ¶ 33.) In their motion, Plaintiffs explained that the settlement agreement provided for Grubhub to create a non-reversionary cash fund of $7,154,586.00, that Class Counsel would seek no more than one-third of the fund as attorneys' fees, that Class Counsel would also seek reimbursement of all reasonable litigation expenses, and that Class Representatives would seek service awards up to $20,000 each. (ECF No. 267-1; Rivas Decl., ¶ 33.). The Court granted preliminary approval of the Settlement on September 4, 2025, and entered a schedule for settlement-related events (including the filing of this motion) leading to the final approval hearing set for April 15, 2026. (ECF No. 271; Rivas Decl., ¶ 33.)

## III.   **ARGUMENT**

As explained in detail below, the Court should grant (1) attorneys' fees equal to one-third of the common fund, for a total of $2,382,477.00 in attorneys' fees; (2) reimbursement of reasonable litigation expenses totaling $143,341.59; and (3) Class Representative service awards in the amount of $20,000.00 for each of the nine original Plaintiffs, and $7,000 for Plaintiff Jack Tate d/b/a The Tin Pig, who filed his case in late 2023.

### A. LEGAL STANDARD

Rule 23(h) empowers a court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). To determine the reasonableness of a requested attorneys' fee, courts in the Seventh Circuit use one of two methods: the "percentage of the fund" method, which compares an attorneys' fee against the size of the fund recovered for the class's benefit, or the "lodestar" method, which compares an attorneys' fee against the attorneys' hours worked and hourly billing rates. *See Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014).

While a court has discretion in choosing between the two methods, the "vast majority" of courts in the Seventh Circuit utilize the "percentage of the fund" method. *Chambers v. Together Credit Union*, 2021 WL 1948452, at *1 (S.D. Ill. May 14, 2021) (citation omitted). Courts in this district have recognized that the "percentage of the fund" method is the "favored" approach. *In re Ky. Grilled Chicken Coupon Mktg. & Sales Pracs. Litig.*, 2011 WL 13257072, at *3 (N.D. Ill. Nov. 30, 2011) (citation omitted); *see also In re Dairy Farmers of Am., Inc.*, 80 F.Supp.3d 838, 844 (N.D. Ill. 2015) (noting that the percentage of the fund method "has emerged as the favored method for calculating fees in common fund cases in this district").

### B. THE REQUESTED FEES ARE REASONABLE UNDER THE PERCENTAGE OF THE FUND METHOD

Under the percentage of the fund method, the Northern District of Illinois "commonly award[s] attorneys' fees equal to approximately one-third or more of the recovery." *Goldsmith v. Tech. Sols. Co.*, 1995 WL 17009594, at *8 (N.D. Ill. Oct. 10, 1995) (collecting cases). Indeed, attorneys' fees of one-third of a common fund are "routinely" held to be "appropriate" by this district and the Seventh Circuit, including in cases where the docket is much shorter than here. *See, e.g., Taubenfeld v. AON Corp.*, 415 F.3d 597, 599-600 (7th Cir. 2005) (noting fee awards up to 39% in cases in this district); *Gaskill v. Gordon*, 160 F.3d 361, 364 (7th Cir. 1998) (affirming fee award of

38% of $20 million common fund); *In re Dairy Farmers*, 80 F.Supp.3d at 862 (awarding one-third of $46 million common fund as attorneys' fees); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015) ("[A] thirty percent fee award is not unusual in the Seventh Circuit in common fund cases in which recovery is less than $10 million.") (collecting cases).

The Seventh Circuit has stated that in assessing the reasonableness of a requested percentage to award as attorneys' fees, a "court should do its best to award counsel the market price for legal services." *In re Stericycle Sec. Litig.*, 35 F.4th 555, 559 (7th Cir. 2022) (cleaned up). In determining the market rate for legal work, district courts review factors including: (i) "the risk of nonpayment a firm agrees to bear"; (ii) "the quality of [Counsel's] performance"; (iii) "the amount of work necessary to resolve the litigation"; (iv) "the stakes of the case"; (v) the "complexity, length, and expense of the litigation"; and (vi) "actual fee agreements, data from similar cases, and class-counsel auctions." *Id.* at 560; *In re Dairy Farmers of Am., Inc.*, 80 F.Supp.3d at 844. Plaintiffs' request for one-third of the common fund is reasonable in light of the foregoing factors.

### 1. Class Counsel faced a substantial risk of nonpayment

"Contingent fees compensate lawyers for the risk of non-payment." *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013). "The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Id.*

Class Counsel faced a substantial risk of nonpayment from the outset of this case. Not many Lanham Act cases are brought as class actions, and Grubhub vigorously contested the merits of the claims and the propriety of class certification through its motion to dismiss and motion to strike the class allegations. *See, e.g.,* ECF Nos. 191, 225 (Defendant's briefs in support of its motion to strike Plaintiffs' class allegations). If Grubhub had prevailed on any of these motions, later defeated Plaintiffs' anticipated motion for class certification, or obtained decertification or exclusion of their experts, the case would have resulted in no relief for Plaintiffs.

Had this case not settled, Class Counsel would also receive no payment, all while Plaintiffs and members of the Settlement Class would have incurred no litigation expenses of any kind.

The risks assumed by Class Counsel by accepting this representation pursuing a novel class action strategy on a fully contingent basis weigh in favor of granting Class Counsel's fee request.

### 2. Class Counsel's performance has been of a high quality

Class Counsel have served as lead or co-lead counsel in numerous class actions nationwide and have significant experience in litigating complex class actions and civil litigation in federal courts. (*See* ECF No. 267-3, 267-4 (Firm Resumes).) The results achieved here are meaningful, particularly in light of the real and present risks that Plaintiffs and the Settlement Class would have received nothing at all. In addition, the Settlement provides real monetary benefits to the Settlement Class now—rather than at an undetermined time in the future—assuming Plaintiffs would have defeated Grubhub's motion to strike class allegations, defeated any of Grubhub's other future dispositive motions, successfully moved for and obtained class certification, prevailed at trial, and prevailed in any appeals. Members of the Settlement Class will enjoy their benefits *now* because of the Settlement reached by Class Counsel. *See Donovan v. Est. of Frank E. Fitzsimmons*, 778 F.2d 298, 309 n.3 (7th Cir. 1985) (recognizing the substantial delta between a settlement recovery now against a hypothetical larger recovery years in the future). Because the Settlement Class here is entitled to recover immediate benefits, and those benefits include real monetary compensation, this factor weighs in favor of approving this motion.

### 3. Class Counsel performed a significant amount of work

Class Counsel expended more than 5,000 hours of work over more than five years of litigating this action. (Rivas Decl., ¶ 39; Fegan Decl., ¶ 13.) Class Counsel worked with multiple experts, reviewed thousands of pages of documents produced in discovery, filed several motions to compel, briefed numerous motions, successfully intervened in *CO Craft* to protect the interests of

Plaintiffs and the Settlement Class, and were in the process of preparing their motion for class certification at the time they negotiated the settlement. (Rivas Decl., ¶¶ 3–30.) The number of hours and work performed support Class Counsel's fee request.

### 4. The complexity, length and expense of the litigation

The complex nature of this litigation further favors the requested fee award. While class actions are frequently complex, risky, and expensive to litigate, this case was uniquely so given the many unresolved issues and novel questions of law relating to the pursuit of certification for Lanham Act claims. *See In re TikTok, Inc., Consumer Priv. Litig.*, 617 F.Supp.3d 904, 941 (N.D. Ill. 2022) (recognizing that a "one-third flat fee also is routine for class action settlements in similarly complex fields" of litigation).

The complexity of this case is apparent from its five years of litigation history and docket entries, concurrent litigation in Colorado that threatened to eliminate any possibility of monetary recovery for the Class here, and the numerous contested motions about discovery, class allegations, class certification, and more. What's more, Plaintiffs worked with their expert to develop untested damages models for Lanham Act claims that satisfy Rule 23. Because this case is far from routine, it required seasoned class action attorneys to litigate it toward a successful resolution. Thus, this factor also favors Plaintiffs' requested fees.

### 5. Stakes of the Case

Class action lawsuits like this one are high-stakes litigation. Grubhub fiercely defended itself when facing a potential judgment of tens of millions of dollars had Plaintiffs succeeded at trial. At the same time, Class Counsel brought their many years of experience to bear when assessing the likelihood of success at trial and the possibility that Plaintiffs and the Class may end up with nothing after potentially a decade of litigation. Thus, the recovery of more than $7 million for the Settlement Class confirms both that this action involved high stakes and that Class Counsel

successfully achieved a positive recovery for the Class. Despite the uncertain nature of this litigation, Plaintiffs and Class Members are guaranteed real monetary benefits under the Settlement. Thus, this factor also weighs in favor of granting Plaintiffs' requested fees.

### 6. Actual fee agreements, data from similar cases, and class-counsel auctions

Finally, in addition to the factors discussed above, relevant data from Seventh Circuit cases also confirms the reasonableness of Class Counsel's fee request here. The Seventh Circuit recognizes that when a class action suit "produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund … in recognition of the fact that most suits for damages in this country are handled on the plaintiff's side on a contingent fee basis. The typical contingent fee is between 33 and 40 percent." *Gaskill v. Gordon*, 160 F.3d at 362. (citations omitted). In fact, district courts in this Circuit "regularly award percentages of 33.33% or higher to counsel in class action litigation." *Hale v. State Farm Mut. Automobile Ins. Co.*, 2018 WL 6606079, at *10 (S.D. Ill. Dec. 16, 2018); *see also Behrens v. Landmark Credit Union*, 2018 WL 3130629, at *6 (W.D. Wisc. June 26, 2018) ("[G]enerally, a 33 to 40 percent contingency fee is considered consistent with the market rate and reasonable.").

Here, Class Counsel's attorneys' fee request is one-third of the $7,154,586 common fund, for a total of $2,382,477 in fees. Thus, under Seventh Circuit precedent applying the percentage of the fund method, all the factors support granting Plaintiffs' request.

## C. THE FEE REQUEST IS REASONABLE UNDER A LODESTAR CROSS-CHECK, SHOULD THE COURT CHOOSE TO PERFORM ONE

While the Court has discretion to select the percentage of the fund method to assess Class Counsel's fee request, and while it need not analyze Class Counsel's lodestar at all in that event,[6] Class Counsel's request is also reasonable under the lodestar method. To calculate lodestar, counsel's reasonable hours expended on the litigation are multiplied by counsel's reasonable hourly rates. *See Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Summers v. UAL Corp. ESOP Comm.*, 2005 WL 3159450, at *1 (N.D. Ill. Nov. 22, 2005). The Court may adjust the resulting figure as its discretion through the use of a multiplier, considering various equitable factors. *See United States ex rel. Perez v. Williams*, 2013 WL 1181487, at *1 (N.D. Ill. Mar. 19, 2013) ("The lodestar figure may be adjusted to reflect factors such as the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation."). Where the lodestar is "used merely as a cross-check" to further confirm reasonableness on top of the percentage of the fund method, the lodestar analysis can be 'abridged.'" *In re Trans Union Corp. Priv. Litig.*, 2009 WL 4799954, at *17 (N.D. Ill. Dec. 9, 2009).

Class Counsel's fee is reasonable under the lodestar method, too. Through December 14, 2025, Class Counsel's lodestar of hours worked on this litigation multiplied by reasonable hourly rates is $4,230,395.50. (Rivas Decl., ¶ 39; Fegan Decl., ¶ 13.) Thus, their fee request represents a *negative* (less-than-one) lodestar multiplier of 0.56—in other words, Class Counsel's request is for only 56% of their lodestar. This 0.56 multiplier is far below the typical practice in class actions,

---

[6] "The use of a lodestar cross-check has fallen into disfavor." *George v. Kraft Foods Global, Inc.*, 2012 WL 13089487, at *3 (N.D. Ill. June 26, 2012). The Seventh Circuit has recognized that lodestar cross-checks ignore that contingency-fee clients "care[ ] about the outcome alone," rather than hours billed, and the cross-checks serve only to "reduce class counsel's percentage of the fund" based on the efficiency of their work. *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979-80 (7th Cir. 2003). A district court is not required to perform a lodestar cross-check. *In re Stericycle Sec. Litig.*, 35 F.4th at 567 n.9 (7th Cir. 2022).

where most multipliers range between 1.0 and 4.0, and the average is 2.7. *See In re TikTok, Inc., Consumer Priv. Litig.*, 617 F.Supp.3d at 943 (noting "[i]n practice, most multipliers fall between one and four"); *In re Lawnmower Engine Horsepower Mktg. & Sales Pracs. Litig.*, 733 F.Supp.2d 997, 1015 (E.D. Wis. 2010) (average multiplier is 2.7); *see also Schulte v. Fifth Third Bank*, 805 F.Supp.2d 560, 598 (N.D. Ill. 2011) ("The requested award here would represent a multiplier of less than 2.5, which is not an unreasonable risk multiplier.")

Class Counsel's request for a negative multiplier of 0.56 when compared to their lodestar is yet another "factor supporting the reasonableness of the fee request," given that many courts apply large positive multipliers to lodestar amounts when granting fees. *Domann v. Summit Credit Union*, 2020 WL 1847868, at *2 (W.D. Wisc. Apr. 13, 2020).

The Court should grant Class Counsel's request for one-third of the Settlement Fund as attorneys' fees, for a total of $2,382,477 in attorneys' fees, for the reasons above.

### D.     PLAINTIFFS' REQUEST FOR REIMBURSEMENT OF EXPENSES SHOULD BE GRANTED

Plaintiffs request $143,341.59 for reasonable expenses incurred in litigating this action. (Rivas Decl., ¶ 44, Fegan Decl., ¶ 16.) Courts regularly hold that counsel are entitled to reimbursement of reasonable expenses incurred in the prosecution of class actions. *See* Fed. R. Civ. P. 23(h); *see also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392 (1970) (recognizing the right to reimbursement of expenses when a common fund is established for the class's benefit); *see, e.g., Beezley v. Fenix Parts, Inc.*, 2020 WL 4593823, at *1 (N.D. Ill. Aug. 7, 2020) (reimbursing all fair and reasonable expenses).

Plaintiffs' expenses are consistent with market rates and practices and include, but are not limited to, filing fees, legal research costs, e-discovery software and platform services, travel and lodging expenses for litigation events such as hearings in this case and *CO Craft,* for mediation fees, expert fees (an economist and a Lanham Act marketing expert), and hearing and deposition

transcripts. (Rivas Decl., ¶ 44; Fegan Decl., ¶ 16.) These expenses were necessary to litigate this action in the best interests of the Settlement Class and to achieve the proposed Settlement. (*Id*.)

### E.   THE COURT SHOULD GRANT THE REQUESTED SERVICE AWARDS TO REFLECT CLASS REPRESENTATIVES' CONSIDERABLE TIME AND EFFORT

"[C]ourts have long recognized that named plaintiffs may receive compensation for shouldering the time-consuming burdens of litigation and assuming risks of financial, and potentially reputational, harm." *Scott v. Dart*, 99 F.4th 1076, 1085 (7th Cir. 2024). Service awards for class representatives are "consistent with" Rule 23(e)'s mandate to "treat[ ] class members equitably relative to each other" in settlements because, in class actions, "the named plaintiffs invest in the case more heavily than their unnamed counterparts." *Id.* at 1086 (citing Fed. R. Civ. P. 23(e)(2)(D)). Because service awards reflect these heavy investments, in the Seventh Circuit, "class representative service awards of $10,000 to $25,000 or more are not uncommon." *Chambers*, 2021 WL 1948452, at *3.

Class Counsel respectfully request that the Court approve a service award of $20,000 for each of the nine original Plaintiffs, and $7,000 for Plaintiff Jack Tate d/b/a The Tin Pig, LLC who filed his case in December 2023.[7] In deciding whether service awards are warranted, courts consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). The Plaintiffs here have gone above and beyond in doing so.

---

[7]Plaintiff Jack Tate d/b/a The Tin Pig, LLC participated only in a portion of the litigation after filing a lawsuit that was later consolidated into this action years into the litigation.  While the other nine Plaintiffs each spent 200 or more hours litigating this action, The Tin Pig spent almost 70 hours litigating this action. (*See* ECF No. 171-72 (adding The Tin Pig to this action in September 2024).) (*See also* Declaration of Jack Tate ¶ 70.)

Plaintiffs took actions to protect the Settlement Class, and the Class benefitted with the Settlement accordingly. Multiple Plaintiffs objected to the *CO Craft* settlement that would have left the Settlement Class here unable to obtain any monetary relief. (*See* Declarations of Brian Pearson for Plaintiff Lynn Scott, LLC (at ¶ 11), Kendra Kolling for Plaintiff The Farmer's Wife, LLC (at ¶ 11), Thuan Luu (at ¶ 9), Michael Woodruff for Plaintiff Old Crown, Inc. (at ¶ 9), Elmer Rodriguez for Plaintiff MDR, LLC (at ¶ 9), Michael Moran for Plaintiff Momobbq, Co., LLC (at ¶ 9), Tara Cronbaugh for Plaintiff Iowa City Coffee Company (at ¶ 10).) The Plaintiffs personally and extensively participated in discovery, in settlement negotiations and worked together to come to an arrangement that benefitted the Settlement Class as a whole rather than the individual Plaintiffs. (Declarations of Brian Pearson for Plaintiff Lynn Scott, LLC (at ¶¶ 6–19), Kendra Kolling for Plaintiff The Farmer's Wife, LLC (at ¶¶ 6–19), Thuan Luu (at ¶¶ 6–18), Michael Woodruff for Plaintiff Old Crown, Inc. (at ¶¶ 6–18), Cole Berlin for Plaintiff 132 Degrees, LLC (at ¶¶ 6–17), Elmer Rodriguez for Plaintiff MDR, LLC (at ¶¶ 6–18), Michael Moran for Plaintiff Momobbq, Co., LLC (at ¶¶ 6–18), Eric Gitenstein for Plaintiff MF Tasty, LLC (at ¶¶ 6–19), Tara Cronbaugh for Plaintiff Iowa City Coffee Company (at ¶¶ 6–20).) Each Plaintiff faced reputational risk for serving as a public plaintiff in a lawsuit against a major food-service industry corporate defendant. Further, each Plaintiff expended significant time and effort in litigating this action. Each Plaintiff for which a $20,000 service award spent more than 200 hours of its time (away from its business) to participate in this lawsuit on behalf of all Settlement Class members over the course of multiple years. (Declarations of Brian Pearson for Plaintiff Lynn Scott, LLC (at ¶ 6), Kendra Kolling for Plaintiff The Farmer's Wife, LLC (at ¶ 6), Thuan Luu (at ¶ 6), Michael Woodruff for Plaintiff Old Crown, Inc. (at ¶ 6), Cole Berlin for Plaintiff 132 Degrees, LLC (at ¶ 6), Elmer Rodriguez for Plaintiff MDR, LLC (at ¶ 6), Michael Moran for Plaintiff Momobbq, Co., LLC (at ¶ 6), Eric Gitenstein for Plaintiff MF Tasty, LLC (at ¶ 6), Tara Cronbaugh for Plaintiff Iowa City Coffee

16

Company (at ¶ 7).) And The Tin Pig also participated in the case by providing facts for the complaint, responding to written discovery requests, searching for and producing responsive documents, preparing to sit for deposition, and meeting with his attorneys to discuss the case. (Declaration of Jack Tate for Plaintiff Jack Tate d/b/a The Tin Pig, LLC (at ¶¶ 6–15).) Each of the relevant factors weighs strongly in support of ordering the requested service awards.

The amount of the requested service awards is in line with awards in similar cases where plaintiffs spent hundreds of hours of time in litigation lasting several years and participating in discovery throughout, all while facing the risk that they could lose the case without any recovery. In fact, this District has ordered service awards in excess of $20,000 on multiple occasions in recognition of similar effort and risk. *See, e.g.*, *Craftwood Lumber Co. v. Senco Brands, Inc.*, No. 14-cv-6866, Dkt. 171 (Final Approval Order) at 8 (N.D. Ill. June 9, 2017) ($35,430 awarded); *In re Navistar MaxxForce Engines Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2020 WL 2477955, at *4 (N.D. Ill. Jan. 21, 2020) ($25,000 awarded to 29 plaintiffs); *Cook*, 142 F.3d at 1016 ($25,000 award affirmed); *Craftwood Lumber Co. v. Interline Brands, Inc.*, 2015 WL 1399367, at *6 (N.D. Ill. Mar. 23, 2015) ($25,000 awarded); *Charvat v. Valente*, 2019 WL 5576932, at *10 (N.D. Ill. Oct. 28, 2019) ($25,000 awarded); *see also BNVS Transport LLC v. C&K Trucking, LLC*, 2023 WL 11983614, at *3 (N.D. Ill. Feb. 22, 2023) ($20,000 awarded to multiple plaintiffs). The efforts of the Plaintiffs in this case merit the requested service awards.

## IV.  **CONCLUSION**

For the reasons explained above, Plaintiffs respectfully request that the Court enter an order granting (1) attorneys' fees totaling $2,382,477.00 (one-third of the $7,154,586.00 Settlement Fund); (2) reimbursement of reasonable litigation expenses and costs totaling $143,341.59; and (3) service awards in the amounts of (a) $20,000.00 each for Plaintiffs Lynn Scott, LLC; The Farmer's Wife, LLC; Thuan Luu; Old Crown, Inc.; 132 Degrees, LLC; MDR, LLC; Momobbq, Co., LLC;

MF Tasty LLC; and Iowa City Coffee Company, and (b) $7,000.00 for Plaintiff Jack Tate d/b/a

The Tin Pig, LLC.

Dated: December 19, 2025                             Respectfully submitted,

                                                     /s/ *Elizabeth A. Fegan*

                                                     Elizabeth A. Fegan
                                                     **FEGAN SCOTT LLC**
                                                     150 S. Wacker Dr.
                                                     24th Floor
                                                     Chicago, IL 60606
                                                     Telephone: (312) 741-1019
                                                     Facsimile: (312) 264-0100
                                                     beth@feganscott.com

                                                     Jonathan D. Lindenfeld (pro hac vice)
                                                     **FEGAN SCOTT LLC**
                                                     305 Broadway, 7th Floor
                                                     New York, NY 10007
                                                     Telephone: (332) 216-2101
                                                     Facsimile: (917) 725-9346
                                                     jonathan@feganscott.com

                                                     Rosemary M. Rivas (pro hac vice)
                                                     Brian Johnson (pro hac vice)
                                                     **GIBBS MURA LLP**
                                                     1111 Broadway, Suite 2100
                                                     Oakland, California 94607
                                                     Telephone: (510) 350-9700
                                                     Facsimile: (510) 350-9701
                                                     rmr@classlawgroup.com
                                                     bej@classlawgroup.com

                                                     *Counsel for Plaintiffs and the Proposed Class*